723 So.2d 1217 (1998)
Laura Atwood McREE (Hibbert), Appellant,
v.
Charles Michael McREE, Appellee.
No. 96-CA-01182 COA
Court of Appeals of Mississippi.
November 24, 1998.
*1218 Donald A. McGraw, Jr., Patrick M. Rand, Canton, Attorneys for Appellant.
Mark A. Chinn, Jackson, Attorney for Appellee.
Before THOMAS, P.J., and KING, PAYNE and SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Laura Atwood McRee Hibbert appeals from an order of the Madison County Chancery Court, transferring custody of her minor son to her ex-husband, Charles Michael McRee. Hibbert asserts that the chancery court committed these errors: (1) finding that there was not a material change in circumstances; (2) relying on a modification provision in the original child custody agreement; and (3) relying exclusively in making the custody decision on the sex of the child and on the stability and constancy McRee. We find that these issues are without merit and affirm.

FACTS
¶ 2. On February 8, 1996, Charles Michael McRee (McRee) was granted a divorce from Laura Atwood McRee Hibbert (Hibbert) on the grounds of adultery. Hibbert and McRee agreed that the final judgment of divorce would incorporate a child custody recommendation prepared by Paul Davey, a court-appointed expert. The recommendation provided: "Since both parents have stated strong desires to remain in the Jackson area, and since [the minor child] is not yet school age, it is recommended that [the child's] physical custody be shared jointly. The evaluators recognize that this is an unusual recommendation but in this case it appears to be both justified and to be the best recommendation for [the child]." As a result of the recommendation, Hibbert and McRee shared joint legal and physical custody of the child on alternating months with reasonable periods of visitation. The recommendation also provided that "[s]hould one of the parents relocate, then [the minor child] should remain with the parent who stays in this area so as to preserve the other facets of his life."
¶ 3. On June 12, 1996, Hibbert filed a petition for modification, seeking sole custody of the child subject to reasonable visitation by McRee. Because of her forthcoming marriage and relocation to Houston, Texas, Hibbert alleged that there was a material change in circumstances which rendered the visitation schedule under the existing custody agreement impossible. McRee filed a motion to modify the original agreement, requesting sole custody of the child.
¶ 4. Following a hearing, the chancellor concluded that it was necessary to modify the *1219 joint custody agreement because of Hibbert's relocation to Texas. The court noted that as a practical matter the parties could not rely on the traditional standard for modification of child custody, as a modification was unavoidable under the circumstances. Consequently, the chancellor employed the Albright factors traditionally applicable to an original custody order to determine the proper custody. After hearing testimony from numerous witnesses, including three experts, the chancellor awarded primary physical and legal custody of the child to McRee. Hibbert appeals.

DISCUSSION

I. MATERIAL CHANGE IN CIRCUMSTANCES
¶ 5. Hibbert asserts that the chancellor erred in not finding that there was a material change in McRee's circumstances that adversely affected the best interests of the child. Hibbert contends that the chancellor essentially took judicial notice of the fact that there was a material change in circumstances, and thus, foreclosed any necessity on her part to present additional evidence.
¶ 6. Traditionally in order to justify the modification of a custody decree, the non-custodial parent must prove that since the entry of the decree, a material change in circumstances has occurred within the custodial home which adversely affects the child's welfare. Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996). Once such an adverse change has been shown, the moving party must show that a change in custody is in the best interest of the child. Id. During the hearing, the chancellor noted that a change in the original custody agreement was inevitable. The joint custody agreement, which provided for the child to stay with each parent on alternating months, was impractical once Hibbert moved to Texas. As the court stated, "I imagine that all parties will agree that the current situations, whether it was good or not, we're going to have to change it. The basic question here is who is going to have primary custody." The parties agreed.
¶ 7. The chancellor permitted Hibbert to present evidence relating to a change in McRee's circumstances. In fact, the chancellor heard testimony from Hibbert and other witnesses pertaining to McRee's zealous work ethic, his frequent dining outside of the home, and his leniency toward the child. The chancellor never prohibited Hibbert from presenting evidence that McRee was an unsuitable custodial parent. Thus we cannot agree with Hibbert's allegations that the chancellor's initial statement that custody would have to be changed from joint to one person having primary custody, in some fashion interfered with the presentation of evidence.
¶ 8. The chancellor heard testimony from several witnesses concerning McRee's devotion, care, and support of his child. None of this testimony was incredible, unbelievable, or substantially impeached. That evidence fully supported the view that he was a proper person to have primary custody. The chancellor committed no manifest error in finding McRee a fit parent.

II. RELIANCE ON PROVISION IN ORIGINAL CUSTODY AGREEMENT
¶ 9. Hibbert also asserts that the chancellor erred in awarding custody of the child to McRee based on a provision in the original agreement recommended by Davey, the court-appointed expert, which was incorporated into the final judgment of divorce. The agreement provided that if either parent moved from the Jackson area, the child would remain in the surrounding area with the other parent. Hibbert contends that the provision was unenforceable, and thus, the chancellor erred in awarding McRee primary custody of the child.
¶ 10. The biggest problem with this argument is that it rests on a faulty premise. The chancellor did not simply enforce the terms of the original custody order. Such an assertion overlooks the substantial time consumed at the hearing, and substantial consideration made in the order, of evidence regarding the best interest of the child. The chancellor concluded that since custody would have to be changed, the two-pronged standard normally used for modification was inapplicable. The chancellor employed the *1220 Albright factors in making a de novo custody decision of what ultimately was in the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 11. Chancellors are not supposed to be automatons, mindlessly applying by rote multi-part tests handed down from above. Taking the parties as he found them, with a pre-existing order mandating joint and alternating periodic custody, the chancellor had to determine what was in the best interest of the child. Quickly determining that leaving custody unchanged was impractical, he was not required to force that decision into some general framework that just was not applicable. To look at custody anew and apply the correct Albright factors was in the best tradition of what chancellors are supposed to do, and that is to seek equity. See Bredemeier v. Jackson, 689 So.2d 770, 776-77 (Miss. 1997).
¶ 12. The chancellor heard an abundance of testimony from witnesses representing the interests of both Hibbert and McRee. The witnesses testified concerning the ability of Hibbert and McRee to care, nurture, and adequately provide for the child. Hibbert and McRee also presented evidence relating to their individual parenting skills, home environment, employment, health, moral fitness, and relationship with the child. Additionally, three experts testified about the respective parental abilities of Hibbert and McRee. Each of the experts agreed that it was important to offer the child the stability and consistency he needs in his life.
¶ 13. Paul Davey, a court-appointed expert, who participated in the original divorce proceedings, testified that he initially recommended joint custody in an effort to preserve the stability in the child's life. Davey stated that he made the unusual joint custody recommendation based on representations from Hibbert and McRee about their strong desire to remain in the Jackson area. Although Davey had some reservations in regard to Hibbert's sincere desire to remain in the area, Davey testified that he decided to give her the benefit of the doubt. Davey stated that if he did not have the option of recommending joint custody, then "[a]lmost certainly, custody would have gone to Mr. McRee."
¶ 14. Hibbert contends that the modification provision in the original agreement was unenforceable in light of Bell v. Bell, 572 So.2d 841, 845 (Miss.1990), which barred provisions that would change custody if the custodial parent moved. That argument need not be resolved since the chancellor did not base his decision to award McRee primary custody of the child upon the modification provision in the original agreement. Although the chancellor referred to the provision in his opinion, the chancellor expressly stated that his decision was governed by the Albright factors and ultimately the best interest of the child.
¶ 15. The chancellor committed no manifest error in awarding McRee custody of the child.

III. CONSIDERATION OF THE SEX OF THE CHILD AND THE STABILITY AND CONSTANCY AFFORDED TO THE CHILD
¶ 16. Hibbert argues that the chancery court erred in awarding custody to McRee based on the sex of the child and the ability of McRee to provide a stable and constant home environment. Although Hibbert recognizes that these are among the Albright factors to consider in awarding custody, she contends that the chancellor erred in focusing primarily on these two factors. Additionally, Hibbert asserts that the chancellor's principal consideration of the child's surroundings was, in essence, an acceptance of the unenforceable modification provision in the original agreement.
¶ 17. We find that the chancellor was correct in considering sex and the stability and consistency afforded to the child by McRee. We do not agree that the chancellor focused solely on these two factors, but used them in conjunction with the other Albright factors.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
*1221 BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, and PAYNE, JJ., concur.