McMILLIN, C.J.,
for the Court:
¶ 1. This is a case involving the custody of a male child who was three years old at the time of the divorce of his parents in 1995. The parties originally agreed to joint custody with the physical custody being approximately equally divided between the parents. In October of 1996, the mother, who had since remarried, filed a petition seeking to modify the physical custody arrangement. She presented evidence that she and her new husband had moved to another town. She contended at the hearing that these changed circumstances, combined with the fact that the child had reached school age, rendered the existing equal split of time with the child unworkable.
¶ 2. The father filed a countering petition seeking sole custody of the child in which he asserted that the child had been *618 sexually abused by his mother and physically abused by the mother’s new husband. The chancellor denied the father’s request to change custody based on the allegations in his counter petition, and the father has now appealed.
¶ 3. The chancellor, in his ruling, also altered the time the child would spend with each parent, giving substantially more time to the mother than what was set out in the original judgment. As to this altered physical custody arrangement, the father purports to raise a separate issue that this constituted a custody change unsupported by the necessary finding of a material change in circumstance adverse to the child’s welfare. However, the father’s brief contains no separate argument or citation to authorities on that proposition. Rather, he confines his argument strictly to his dissatisfaction with the chancellor’s refusal to conclude that the child had been abused by his mother and stepfather. We will address that concern only in this opinion.
. ¶ 4. The father raises one additional issue that arises indirectly out of the child abuse allegations. Upon reaching the apparent conclusion that the child’s paternal grandmother was influencing the child to report incidents of abuse that may not have actually occurred, the chancellor limited the time that the child could spend in the sole care of the grandmother. The father claims this to be an abuse of the chancellor’s discretion. We will address that issue at the conclusion of this opinion.
¶ 5. The chancellor heard extensive testimony that included expert opinion testimony from a number of witnesses working in the area of child abuse. At the conclusion of the evidence, the chancellor entered a lengthy analysis of his findings of fact and the conclusions he felt were warranted based on his findings. His ultimate determination was that the allegations of physical and sexual abuse of the child by his mother and stepfather were not substantiated by the evidence. As a result, he declined to grant the father the relief requested. In reaching the conclusion that abuse was not proven, the chancellor offered the view that the timing of the allegations of sexual abuse was suspect, pointing out that they surfaced only after the mother had commenced her proceeding, though evidence was presented on the father’s behalf that, if true, would indicate that he (or his mother) was aware of such behavior prior to that time. The chancellor further concluded that much of the attention the child had received at the hands of various experts during the course of the proceeding was for investigatory purposes only with no therapeutic element attached. The chancellor suggested that a number of the experts appeared to have taken a partisan role in the case at an early stage and noted that the damaging statements made by the child concerning incidents of abuse were made only after the child had been subjected to repeated interrogative sessions with these individuals.
¶ 6. In weighing the validity of the allegations of abuse, the chancellor also observed that much of the evidence of behavior consistent with an abused child was derived from a journal or chronicle of events supposedly compiled by the child’s paternal grandmother. The chancellor was particularly skeptical of the fact that, as mentioned briefly above, this record contained references to a number of events that occurred prior to the time the mother filed her custody modification petition, but that the paternal grandmother did not report any such suspicions to the Department of Human Services until several days after her son was served with the petition to modify.
¶ 7. The chancellor was critical of the role played by the Department of Human Services caseworker, concluding that the caseworker had acted in a precipitate manner in obtaining an order through the Youth Court to remove the child from the mother’s care and place the custody of the child with the paternal grandmother on the flimsiest of evidence and at a time *619 when the caseworker knew that a custody dispute was pending in the divorce proceeding. (This temporary emergency custody order was negated by the chancellor soon after he learned of its entry.) The chancellor was of the view that this caseworker had an inordinate amount of contact with the paternal grandmother as the matter played out and chose to substantially discount the caseworker’s testimony in support of the contention of sexual and physical abuse.
¶ 8. In order to modify an existing child custody order, the chancellor must, at the threshold, determine that there has been a material change in circumstance that is detrimental to the best interest of the child involved. McRee v. McRee, 723 So.2d 1217 (¶ 6)(Miss.Ct.App.1998). At the conclusion of the proof in this case, the chancellor decided that the father had not carried his burden of demonstrating either sexual or physical abuse of the child by his former wife and her new husband. Those allegations of abuse were the only reasons advanced by the father to show that a material change of circumstance detrimental to the child’s interests had occurred. Therefore, the chancellor declined to modify custody as requested by the father.
¶ 9. On appeal, the father urges this Court to conclude that the chancellors findings of fact were clearly erroneous as being contrary to the great weight of the credible evidence presented at the hearing. As to such matters, this Court has a limited scope of review. The chancellor sits as fact-finder and his conclusions regarding witness credibility and what weight and worth to assign to the testimony of the various witnesses are entitled to substantial deference. Ewing v. Ewing, 749 So.2d 223 (¶ 5)(Miss.Ct.App.1999). Only if, for reasons that we find persuasive, we are convinced that the chancellor was manifestly wrong or clearly erroneous in his findings may we intercede. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). In a colorful manner that emphasizes the point upon which our decision must turn in this case, the. Mississippi Supreme Court has said:
The trial judge saw [the] witnesses testify. Not only did he have the benefit of their words, he alone among the judiciary observed their manner and demean- or. He was there on the scene. He smelled the smoke of battle. He sensed the interpersonal dynamics between the lawyers and the witnesses and himself. These are indispensable.
Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983). Certainly, in this case, there was evidence presented that, if found credible by the chancellor, would have supported an allegation of sexual abuse of this child. Nevertheless, the chancellor, after “smelling the smoke of battle,” made detailed findings in which he documented, not only the fact that he refused to put substantial credence in the testimony of a number of the witnesses, but the circumstances, events, and even witness demean- or that led him to find these witnesses’ facially-damaging evidence unpersuasive. The father undertakes in his brief, in much the same painstaking manner as that employed by the chancellor, to re-examine the evidence in great detail to point out those matters in evidence that he concludes were substantially damaging to the position of his former wife and her new husband in this litigation. Yet, in this review of the record, the father fails to make any compelling argument as to why this Court should disregard the chancellor’s view of the credibility (or lack thereof) of the witnesses supplying such evidence. Absent some indication that the chancellor’s assessment of the witnesses’ credibility was manifestly in error, this Court is without authority to intervene on this score.
¶ 10. The father, as a separate issue on appeal, points out that the guardian ad litem appointed for the child during the proceeding recommended that the father should be given primary custody of the child. He urges this Court to conclude that the chancellor abused his discretion in disregarding the view of the guardian ad *620 litem. The father frankly admits that he was unable to find any authority to support such a proposition. It would be surprising, indeed, if such authority existed because such a rule would do nothing other than to substitute the guardian ad litem for the chancellor as the decision-maker in such matters. A guardian ad litem for a minor child is an advocate for the child alone, presumably uninfluenced by the litigating position of either parent since, in some cases, a parent may take a position that, when viewed objectively, actually appears not to be in the child’s best interest. In Interest of R.D., 658 So.2d 1378, 1383 (Miss.1995). See also E.M.C. v. S.V.M., 695 So.2d 576, 580 (Miss.1997) (“A guardian ad litem should be ... ‘... unbiased and independent ... to insure protection for the child’s best interests.’ ”). That is an important role, but that role is fulfilled when the guardian vigorously advances a position that the guardian believes to be in the child’s best interest. However, there is not, nor ought there to be, any presumption of correctness attached to the litigating position taken by a guardian ad litem. The view of the guardian and the reasoning behind that view are nothing more than additional information to aid the chancellor in making the decision on the merits of the matter in dispute — a matter that ultimately lies with the chancellor and which cannot be delegated by the appointment of a .guardian ad litem. S.N.C. v. J.R.D., Jr., 755 So.2d 1077 (¶¶ 16-17)(Miss.2000).
¶ 11. In summary, we can discover no elearly-identifiable error in the chancellor’s decision to discount much of the evidence as the product of biased or prejudiced witnesses. Neither can we say with any degree of certainty that the chancellor was manifestly wrong when he determined, after hearing all the evidence, that certain facially-damaging statements made by the child to others were the product of lengthy investigative sessions conducted with the child in such a manner as to suggest to the child the desired response. The recommendations of the guardian ad litem that run contrary to the ultimate decision of the chancellor as to possible abuse of the child were not so compelling as to give rise to a finding that the chancellor abused his discretion by disregarding those recommendations.
¶ 12. We find no abuse of discretion in the chancellor’s decision to limit the child’s interaction with the paternal grandmother. The father’s argument on this point consists solely of the contention that the adjudication amounted to a determination of the grandmother’s visitation rights in a proceeding to which she was not a party. He cites no authority in support of the proposition and we do not find that to be the case. The chancellor, as a part of his ruling on child custody and visitation in a divorce proceeding, may make reasonable limitations on the activities and contacts of the children during their stay with one parent in the limited instance where an otherwise-unrestricted situation would “present an appreciable danger of hazard cognizable in our law.” Newsom v. Newsom, 557 So.2d 511, 517 (Miss.1990). The chancellor concluded, and there was evidence to support the conclusion, that this child’s grandmother’s activities, intended to give rise to unwarranted claims of sexual abuse, were materially detrimental to this child’s welfare. Based upon that finding, the chancellor proceeded, not to end any contact between the child and the grandmother, but to reasonably limit those opportunities where such efforts could occur. We find the ruling within the range of discretion afforded the chancellor to protect the child from a cognizable danger and we decline to intervene.
¶ 13. Unable to find reversible error for any of the reasons assigned by the father in this case, we affirm the decision of the chancellor.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*621 KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. PAYNE, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, J. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.