799 So.2d 902 (2001)
Bridgett Huggins MASSEY, Appellant
v.
Dan HUGGINS, Appellee.
No. 2000-CA-00929-COA.
Court of Appeals of Mississippi.
November 6, 2001.
*904 James R. Hayden, Hattiesburg, for Appellant.
Terry L. Caves, Laurel, for Appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. At the time of their divorce, the parties agreed to joint custody of their three children. Several years later, the chancellor granted a motion to give the father sole custody. On appeal, the children's mother argues that insubstantial grounds were shown for modification. We disagree and affirm the change in custody. However, we reverse the part of the final decree that required the mother to pay child support.

STATEMENT OF FACTS
¶ 2. Dan Huggins and Bridgett Huggins Massey were married in 1984. Three children were born to them: Brittany Nicole in 1987, Brandi Kaitlyn in 1990, and Emily Brooke in 1993. A divorce was granted to the couple in 1996 based on irreconcilable differences. The decree approved the parties' agreement as to child custody, support, and the division of property. The mother and father received joint physical and legal custody of the three children. The parties had agreed that no child support would be awarded. The feature of the agreement that became the focus of practical difficulties was the frequent change in custody. The father had custody every weekend beginning at 5:00 p.m. on Friday and ending at 8:00 p.m. on Sunday; he also had the children during the week beginning at 3:00 p.m. on Wednesday *905 and ending Thursday morning when the children were to be in school. During the children's summer vacation from school, the father's custody began on the first Friday after the last school day of the year and ended the week prior to the first day of the next school year. The children's mother had custody during the summer every weekend beginning at 5:00 p.m. on Friday and ending at 5:00 p.m. on Sunday.
¶ 3. For a time, the parents remained in the same general vicinity. In July 1998, the mother married Clayton Massey. The couple moved from Jones County to south Forrest County. There the three children were enrolled in school.
¶ 4. The father Huggins was a minister in the Church of Christ. He too remarried and initially remained in Laurel. In May 1998, he moved to Natchez in order to continue his ministry at another church. While in Natchez, Mr. Huggins continued to exercise his rights to custody on the weekends but did not exercise his physical custody rights on Wednesdays.
¶ 5. In October 1999, Mr. Huggins filed for a modification of custody. The mother filed her own claim for a modification. Each parent now wanted sole custody. Mrs. Massey also sought to have her former husband start paying child support; Mr. Huggins did not seek any support payments.
¶ 6. While the modification petitions were pending, Mr. Huggins in January 2000 moved to Long Beach. Shortly thereafter, Brittany Huggins, now twelve years old, moved to Long Beach to live with her father. In February 2000, Massey and the two younger children moved to Petal, Mississippi, and the two other children were enrolled in the Petal School District.
¶ 7. After a two day trial, the lower court modified the former decree on May 12, 2000. The father was granted primary physical custody of the three children and the mother was given substantial visitation rights. The mother also was ordered to pay child support in the amount of 22% of her gross income.

DISCUSSION

I. Modification of Child Custody
¶ 8. An appellate court does not reweigh the evidence considered in chancery court. If we find substantial evidence to support the findings of fact that are made by a chancellor, even if our evaluation might have been different, and unless we find that the chancellor applied an erroneous legal standard, we will affirm. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995).
¶ 9. The legal structure into which a chancellor should place the evidence in custody modification proceedings has three sections. (1) The initial burden is on the party seeking the change to demonstrate that there has been a material change in the circumstances affecting the child. (2) If that is shown, it must also be shown that the change is detrimental to the child's welfare. (3) Finally, the chancellor must find that the change in custody is in the child's best interest. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997).
¶ 10. Here, the chancellor found that there was a material change in circumstances adverse to the best interests of the three children. That change was that because of the parents' no longer living in the same vicinity, joint physical custody with frequent change between the parents was unworkable if not impossible. The chancellor determined that the distance between the residences and the different *906 school districts that were now involved required a change in custody.
¶ 11. There have been prior decisions regarding initial joint custody arrangements that became impractical after one or both parents moved. In each of them, the court agreed that there should be a modification in custody. Lackey v. Fuller, 755 So.2d 1083, 1089 (Miss.2000); Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996); McRee v. McRee, 723 So.2d 1217, 1219 (Miss.Ct.App.1998).
¶ 12. In McRee, the parties had agreed to alternating monthly custody at a time when both parents lived in the Jackson, Mississippi area. McRee, 723 So.2d at 1218. This arrangement was rendered impractical when one parent decided to move to Texas. Id. at 1219. The chancellor made an initial determination that the joint custody arrangement agreed to by the parties would have to be altered and that primary custody would be vested in one parent. Id. We affirmed, and the Supreme Court later in a similar appeal referred approvingly to our conclusion. Lackey, 755 So.2d at 1088.
¶ 13. Though not as severe as in McRee, impracticality exists here. The prior custody arrangement had four exchanges between the parents every week. Early in the proceedings, the chancellor stated that "as I view the situation, the biggest change that has occurred, as far as these parties are concerned, is that their joint physical custody arrangements are not possible now because they live in different areas of the state." The chancellor also stated that "there will have to be a change of custody" and that "the issue before the court is whether it's going to be with [the] mother or father."
¶ 14. Having found that the impracticality of the present joint physical custody arrangement was a material change in circumstances adverse to the children's best interests, the chancellor proceeded to evaluate the twelve considerations for making a decision about child custody announced in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). We review that evaluation made by the chancellor on the record of each of the Albright considerations.
(a) Age and health of the children: The chancellor determined that the children, who were between the ages of 7 and 12, did not require constant supervision. He also found that they were in good health. Neither parent received any advantage under this consideration.
(b) Parent with continuing care of the children: The chancellor determined that this factor weighed in favor of the father because since the time of the divorce he had the three children in his care more than the mother had. One of the children testified that she believed her father was her primary care giver. Mrs. Massey also testified that the father had custody more than did she.
(c) Parent with better parenting skills: The chancellor determined this factor favored the father. There was testimony that he helped the children with their homework and other activities outside of the home. One daughter testified that her mother had called her the "devil," choked her, pulled her hair, refused to speak to her for extended periods of time, and drank alcohol daily. This child also testified that once when she had the flu, her mother left her at home alone for two days.
(d) Primary care/employment responsibilities of the parents: The chancellor found that Massey's working hours were from 8:00 a.m. to 5:00 p.m. and that Mr. Huggins' working hours were from 9:00 a.m. until 6:00 p.m. at the latest. Because of his belief that the children needed little supervision, the chancellor held that the *907 difference in the work schedules themselves had little weight. However, the chancellor held that the factor favored the father because his schedule was flexible and would allow him to be home with the children during the day if possible. The chancellor found that the mother's schedule was inflexible.
(e) Emotional ties of child with parent: The chancellor determined that Bridgett, the oldest child, had a significant emotional bond with her father, so this factor, insofar as it concerned Bridgett, weighed in favor of Mr. Huggins. Neither of the younger children testified, so the chancellor made no finding as to them.
(f) Moral fitness of the parents: The chancellor found this factor to weigh heavily in favor of the father. Mr. Huggins was a minister of the gospel. Mrs. Massey admitted to having cohabitated with her second husband prior to their marriage while the children were in her custody.
(g) Home, school, and community record: The chancellor found, based on school attendance records, that the two youngest children had nine unexcused absences each and that Brittany, the oldest child, had seven unexcused absences while in their mother's care. No explanation was presented regarding the absences. The chancellor found that the school attendance records tended to support Brittany's testimony that her mother would keep the children home from school for frivolous reasons.
(h) Preference of the Child: The chancellor found that as to Brittany this factor weighed in favor of the father. She had expressed an unequivocal preference to live with him. Furthermore, Mrs. Massey had allowed Brittany to live with Mr. Huggins since January 2000. No evidence was presented as to why Brittany's desire to live with Mr. Huggins was not in her best interest.
(i) Stability of the home environment: The chancellor found this factor to weigh in favor of the father. Mrs. Massey was now estranged from her second husband and had obtained a restraining order against him. She testified that her second husband had a drug abuse problem which was the reason that she was seeking a divorce. The chancellor found that the father's home environment was stable and his second marriage appeared to successful. Brittany also testified that while her father's home was normal that her mother's home was unsettled and chaotic.
¶ 15. Summary of factors. Under the chancellor's evaluation, all but one of the Albright factors favored the father. The only factor not to favor him was neutral.
¶ 16. The chancellor's determination was also based on the conclusion that it would be improper to separate the three children. The Supreme Court has stated that absent "some unusual and compelling circumstance dictating otherwise, it is not in the best interest of children to be separated." Sparkman v. Sparkman, 441 So.2d 1361, 1362 (Miss.1983). No unusual or compelling circumstances were shown.
¶ 17. Mrs. Massey raises three specific alleged errors in the custody ruling. We consider each.

Moral indiscretions before the mother's second marriage
¶ 18. Conflicting evidence was presented as to the length of time that Mrs. Massey lived with her second husband prior to their marriage. Mrs. Massey argues that this constituted an improper focus. A court "cannot use the indiscretions of the custodial parent as the sole grounds to change custody." Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983). While the chancellor considered the mother's conduct when *908 evaluating the Albright moral fitness factor, it is evident that the chancellor did not make moral fitness the sole criterion. The chancellor also stated that based on testimony that Mr. Huggins knew of his former wife's conduct at the time the original child custody agreement, her cohabitation could not be a material change in circumstances warranting a modification in custody.

Undue weight to one child's testimony
¶ 19. Mrs. Massey argues that the chancellor disregarded the testimony of everyone but Brittany. We are asked to view Brittany's testimony as biased and based on the child's desire to please her father. However, the chancellor specifically found that Brittany testified freely and "was under no pressure whatsoever" that the chancellor could discern. The chancellor is to judge the credibility of witnesses, not this Court. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994).

Allowing one child's preference to control all
¶ 20. Lastly, Mrs. Massey argues that the chancellor modified custody as to all three children primarily because Brittany, who at the time of trial was twelve years old, expressed her desire to live with her father. We do not find Mrs. Massey's argument to be supported by the record. The chancellor considered the long-standing preference in Mississippi for keeping siblings together as only one reason for granting Mr. Huggins custody of all three children. More importantly, the court found that based on the evidence and an evaluation of the Albright factors, that the best interest of the three children would be better served under Mr. Huggins' care. The desire not to separate the children was simply an additional ground.
¶ 21. We cannot conclude that the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard in modifying the prior joint custody agreement. We affirm.

II. Child Support
¶ 22. The chancellor ordered Mrs. Massey to pay child support. Her husband at no time requested such support, though Mrs. Massey sought support if she obtained sole custody. Under the prior joint custody agreement, neither parent paid child support to the other.
¶ 23. There was testimony as to each parent's income. Mr. Huggins had a gross income of $53,000 per year. Mrs. Massey's financial statement revealed her net monthly income to be $1,071.22. After ordering a change in custody, the chancellor ordered Mrs. Massey to pay child support in the amount of $245.54, which was said to be 22% of her adjusted gross income. The explanation given by the chancellor for his ruling was that since Mrs. Massey was employed, "the law obligates her to provide something toward the support of her children...." Upon objection by Massey's counsel that child support had not been requested by the father, the chancellor stated that "it is not a question of the pleadings ... [but] it's something that the law requires the Court to do in any case." Thus, the court recognized that support had not been requested and no finding of need was made. Instead, the court applied what it found to be a rule automatically requiring an employed, non-custodial parent to pay child support. Whether such a rule exists is the determination that we must make.
¶ 24. The general rules are clear enough. "An award of child support is within the chancellor's discretion and will not be disturbed ... unless the chancellor was manifestly in error in his finding of *909 fact and manifestly abused his discretion." Johnston v. Johnston, 722 So.2d 453, 462 (Miss.1998). The Supreme Court has also stated this:
the chancery court has the inherent power, and it is its duty, where the issue is before the court by proper pleadings, supported by competent evidence, in proceedings in which it has jurisdiction of the parties and subject matter, to make such orders and decrees from time to time as will protect and promote the best interests of minor children.
Wansley v. Schmidt, 186 So.2d 462, 465 (Miss.1966).
¶ 25. In Wansley, the father petitioned for a change of custody of his three children. Wansley's ex-wife answered the petition with a general denial but made no request for child support. Wansley, 186 So.2d at 464. The chancellor ultimately refused to modify custody but ordered that Mr. Wansley's child support payments be increased from approximately $80 per month to $120 per month. Id. Although the Supreme Court viewed the increase in child support as reasonable, the court nevertheless reversed the award holding that "due process required that appellant have fair notice from an appropriate pleading that an increase in the amount of the support award was being sought and was under consideration, so that he might have reasonable opportunity to offer evidence touching both the needs of the children and his ability to pay." Id. at 465.
¶ 26. A statute provides that a chancellor after the initial decree may "on petition, change the decree, and make from time to time new decrees as the case may require." Miss.Code Ann. § 93-5-23 (Supp.2000). Though this statute grants the chancellor broad equitable authority regarding the support of minor children, to order such support without the custodial parent's requesting it by a pleading is an arbitrary deprivation of due process. Fortenberry v. Fortenberry, 338 So.2d 806, 807 (Miss.1976). We will discuss below the effect of a support issue's being tried by consent.
¶ 27. Similarly, the Supreme Court has held that it is error for a chancellor, upon the chancellor's own motion, to order a party to pay child support "absent any notice that [the party] would be required to defend such a proposition and absent any notice that the court was considering ordering [the party] to pay child support." Morris v. Morris, 359 So.2d 1138, 1139 (Miss.1978). A change in custody was sought by the mother of two children in Morris, as she alleged that their father was not properly caring for them. Id. at 1138. The petition was denied and the chancellor also ordered that the mother pay child support. Id. The Supreme Court reversed on the grounds that "there was no notice or suggestion in the record that support payments from Mrs. Morris were even being contemplated by the court on its own or asked for by Mr. Morris." Id. at 1139.
¶ 28. There are some precedents explaining that specific awards of relief can be made if encompassed within more general pleading terms. In one case the mother had not in her pleadings requested child support, but the father stated that he was "willing and able to pay $350 per month as child support." Diamond v. Diamond, 403 So.2d 129, 130 (Miss.1981). On appeal the Supreme Court affirmed the requirement not only that the father pay monetary support but that he make mortgage payments and provide a car so long as his child was a minor. Diamond, 403 So.2d at 132. The Court held that the car and the mortgage payments were child support and that the husband could not complain of those items being awarded as he had "injected the question of custody *910 and support in his original bill of complaint." Id. at 131.
¶ 29. A new basis for flexibility in pleading requirements has been shown by the Supreme Court since the effect of the Rules of Civil Procedure began to be considered. The Court held that "prior to the advent of our civil rules ... the Chancery Court had no authority to order payment of alimony absent an express demand therefor." Queen v. Queen, 551 So.2d 197, 199-200 (Miss.1989). In Queen, the wife had not requested alimony in her divorce pleadings. However, the Civil Rules permit trial by consent of matters that had not been pled. M.R.C.P. 15(b). Since in Queen there was no transcript of the lower court proceedings, the supreme court stated that it could not assume that the husband had objected to his wife's introduction of evidence supportive of alimony. Queen, 551 So.2d at 199. Thus, Queen was decided on the issue of waiver.
¶ 30. This Court has also considered the general issue. Stinson v. Stinson, 738 So.2d 1259, 1263-64 (Miss.Ct.App. 1999). Mr. Stinson was served with process but failed to file pleadings of any kind. Stinson, 738 So.2d at 1259. After a hearing at which only Mrs. Stinson presented evidence, the chancellor granted a divorce and ordered the now ex-husband to "pay $1,100 per month in child support, to maintain health insurance coverage on behalf of the children, to procure a life insurance policy on his life naming the children as beneficiaries, to pay the children's private school tuition, and to pay the second mortgage on the marital home." Id. at 1261. Even though there had been no specific pleading requesting this relief, on appeal we found no error on that basis. Mrs. Stinson had requested "an increase in child support previously awarded" in her complaint and also "such other general relief as the Court deems appropriate." Id. at 1263. Child support can include life and health insurance, college tuition, and other related needs. Id. A party need not specifically request each form of child support ultimately awarded by a chancellor if child support in general is requested.
¶ 31. Returning to the facts of our case, we find that Mrs. Massey requested that her former husband start paying child support if she were awarded custody of the children. The precedents that we have discussed that reversed because of the absence of pleadings requesting certain relief, never examined whether the party complaining on appeal had itself requested that kind of relief. E.g., Wansley, 186 So.2d at 462; Morris, 359 So.2d at 1138. We find that a party's own request does not create notice that should she fail in her claims for child support, that she becomes subject solely by virtue of her own petition to having a child support obligation placed on her.
¶ 32. As to trial by consent, the evidence regarding Mrs. Massey's financial condition came largely from her financial statement and was based on her attempt to show that she would require her husband to support the children if she gained custody. The chancellor stated that he "did not hear a lot of testimony about the issue of child support." Indeed, the parties never injected the issue of Mrs. Massey's paying child support. The chancellor did that after all the evidence was admitted.
¶ 33. Mrs. Massey was not provided notice that she "might be required to defend a claim of child support" nor was there a "suggestion in the record that support payments from [Massey] were even being contemplated by the court on its own or asked for by" Huggins. Morris, 359 So.2d at 1139.
*911 ¶ 34. We reverse the award of child support. We suggest no view on the merits of a properly raised issue of support, as our decision is based on procedurally inadequate notice.
¶ 35. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED IN PART. COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO APPELLANT AND ONE-HALF TO APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.