11 So.3d 178 (2009)
Joy Lynn PEARSON, Appellant
v.
Steven Allen PEARSON, Appellee.
No. 2007-CA-01991-COA.
Court of Appeals of Mississippi.
June 9, 2009.
*180 Eduardo Alberto Flechas, Jackson, attorney for appellant.
Wayne Smith, Liberty, attorney for appellee.
Before MYERS, P.J., GRIFFIS and ISHEE, JJ.
MYERS, P.J., for the Court.
¶ 1. Joy Pearson appeals the Pike County Chancery Court's modification of child custody. The trial court modified the minor child's custody from joint legal and physical custody to joint legal custody with sole physical custody awarded Joy's ex-husband, Steven Pearson. Joy appeals arguing that: (1) the trial court erred in finding a material change in circumstances, and (2) the trial court erred in its Albright analysis. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Steven and Joy Pearson were married on June 6, 1998. Both parties worked as pharmacists at the Southwest Mississippi Regional Medical Center in Pike County. During their marriage, the couple had one daughter, McKenna Claire. She was born on December 2, 2002. The couple remained together in Pike County, Mississippi until on or about January 6, 2006, at which time they separated. The two filed for divorce based on irreconcilable differences, which was finalized by the Pike County Chancery Court on August 9, 2006. As part of the divorce, Steven and Joy executed a child custody and property settlement agreement. The child custody agreement provided that the couple would have joint legal and physical custody. Both parties remained in Pike County during this time.
¶ 3. On or about August 24, 2006, Joy notified Steven that she was considering moving away from Pike County. Prior to the divorce, Joy had contacted a job recruiter about finding new employment. Joy was subsequently hired at St. Dominic's Hospital in Jackson, Mississippi and moved to Brandon, Mississippi on or about October 23, 2006.
*181 ¶ 4. After Joy moved to Brandon, the couple continued to adhere to the joint custody arrangement, even though the parents were approximately eighty miles apart. This resulted in McKenna Claire spending three nights with one parent, and the remaining four nights with the other parent. The parties alternated this schedule weekly, so the parents would theoretically have equal time with McKenna Claire. The couple continued the three/four schedule until December 2006. At that time, the couple changed the schedule to a week-to-week arrangement, with each parent getting McKenna Claire for a full week at a time.
¶ 5. Upon Joy notifying Steven about her intentions to move away from Pike County, Steven filed for a modification of the child custody agreement on October 9, 2006. He claimed that Joy's move constituted a material change in circumstances necessitating a modification in custody. Joy responded to Steven's petition for modification with her own counterclaim for modification. The Pike County Chancery Court conducted a full hearing on the petitions. At the conclusion of the hearing, the chancellor found that Joy's move away from Pike County was a material change in circumstances. The chancellor then conducted an on-the-record analysis of the Albright factors. She concluded the hearing by retaining the joint legal custody but granting Steven sole physical custody of McKenna Claire. Aggrieved, Joy appeals the chancellor's ruling.

STANDARD OF REVIEW
¶ 6. "[I]n custody cases, we are bound by the limits of our standard of review and may reverse only when the decision of the trial court was manifestly wrong or clearly erroneous, or an erroneous legal standard was employed." Hensarling v. Hensarling, 824 So.2d 583, 587(¶ 8) (Miss.2002).

DISCUSSION

I. WHETHER THE CHANCELLOR ERRED IN FINDING A MATERIAL CHANGE IN CIRCUMSTANCES.
¶ 7. "[I]n modification cases, as in original awards of custody, we never depart from our polestar consideration: the best interest and welfare of the child." Johnson v. Gray, 859 So.2d 1006, 1013(¶ 33) (Miss.2003) (citations and internal quotations omitted). However, modification issues are different from original custody determinations:
[We have] emphasized that the request for modification does not simply mean a re-weighing of the Albright factors to see who now is better suited to have custody of the child ... there must be shown ... a material change[,] not just a change in circumstances, that has had an adverse affect [sic] on the child and which requires, or mandates, a change in custody for the best interests of the child.
Beasley v. Beasley, 913 So.2d 358, 361(¶ 8) (Miss.Ct.App.2005) (citation and internal quotation omitted). In order to succeed on a complaint for modification, "the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." Mabus v. Mabus, 847 So.2d 815, 818(¶ 8) (Miss.2003).
¶ 8. Joy contends the chancellor erred when she found that the move to Brandon was a material change in circumstances.[1] *182 She distinguishes the current factual scenario from other circumstances where the appellate courts have found that a move was a material change in circumstances. See Lackey v. Fuller, 755 So.2d 1083 (Miss.2000) (mother moving from Mississippi to New York); Sobieske v. Preslar, 755 So.2d 410 (Miss.2000) (mother moving from Mississippi to Georgia); and McRee v. McRee, 723 So.2d 1217 (Miss.Ct. App.1998) (mother was getting remarried and moving from Mississippi to Texas). Joy argues her move from Pike County to Brandon, approximately eighty miles, is less severe than these cases where one parent moved out of state.
¶ 9. In addition to one parent moving out of state, this Court has found that a short move can also result in a material change in circumstances. See Rinehart v. Barnes, 819 So.2d 564 (Miss.Ct.App.2002) (father moved from DeSoto County, Mississippi to Cordova, Tennessee); Massey v. Huggins, 799 So.2d 902 (Miss.Ct.App.2001) (couple resided in Laurel, Mississippi during the marriage; mother moved to south Forrest County, Mississippi then to Petal, Mississippi; father moved to Natchez, Mississippi, then to Long Beach, Mississippi).
¶ 10. The distance of the move is not dispositive as to whether a material change in circumstances has occurred; it is the effect the move has on the child and the custody arrangement that is dispositive. In each of the above cases, the chancellor or appellate court found that the move by one parent caused the custody arrangement to become impractical or impossible to maintain. In many instances, the parents shared joint legal and physical custody of the child prior to one of the parents moving. After one parent relocated, the custody arrangement became too difficult on the child and the parents to uphold.
¶ 11. In the instant case, Joy's move from Pike County to Brandon caused the custody arrangement to become impractical and difficult to maintain. Regardless of the schedule created by Joy and Steven, it was going to be taxing on both of them to adhere to it. They would be continuously driving back and forth between Pike *183 County and Brandon to meet the requirements of the custody schedule. More importantly, the constant changing of hands would be difficult on McKenna Claire. She would constantly be switching between Brandon and Pike County. McKenna Claire would not feel like one place is home as she would only be there for a week at a time. She would never be solidified in one community. For example, both parents testified that McKenna Claire was taking dance lessons in McComb. If the parents would have continued the week-to-week schedule, this would result in McKenna Claire being in dance for one week and not returning for two weeks. This would apply to any extracurricular activities McKenna Claire participated in, whether in Brandon or Pike County.
¶ 12. Even more supportive of the chancellor's finding of a material change in circumstances is McKenna Claire's age. At the time of the modification hearings, McKenna Claire was four and a half years old. There was much testimony about where McKenna Claire would go to school, in Jackson or in McComb. Naturally, each parent wanted McKenna Claire to go to school in their respective locations. However, it would be impossible for McKenna Claire to maintain the week-to-week schedule once she started school. She would not be able to go to school in Jackson one week and in McComb the next. The supreme court has recognized this problem by affirming a chancellor's ruling that "the advent of school age was a material change in circumstances that rendered the split custody of the child useless and even harmful to the child." Torrence v. Moore, 455 So.2d 778, 780 (Miss.1984). Accordingly, McKenna Claire beginning school, by itself, can be deemed to be a material change in circumstances.
¶ 13. We find that the combination of the lack of stability caused by McKenna Claire being shuffled back and forth between Brandon and Pike County each week and McKenna Claire's beginning school is supportive of the chancellor's finding that a material change in circumstances had occurred. Accordingly, this issue is meritless.

II. WHETHER THE CHANCELLOR ERRED IN APPLYING THE ALBRIGHT FACTORS.
¶ 14. Upon a finding of a material change in circumstances, a court is to apply the Albright factors to determine which parent should have primary custody. McRee, 723 So.2d at 1220(¶ 11). The Albright factors used to determine what is in the best interest of the child in regard to custody are: (1) age, health, and sex of the child; (2) a determination of the parent that had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which parent has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) the moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Joy argues the chancellor erred in her assessment of the age, health, and sex of the child and the mental health of the parents factors. We will address each contention in detail.

A. Age, Health, and Sex of the Child
¶ 15. Joy argues the chancellor erred by not making any specific findings *184 of fact regarding McKenna Claire's age. This Court has reversed and remanded a modification where the chancellor has failed to analyze and make proper findings for each Albright factor. See Lowery v. Mardis, 867 So.2d 1053, 1057(¶ 18) (Miss. Ct.App.2004); see also Sturgis v. Sturgis, 792 So.2d 1020, 1025(¶ 22) (Miss.Ct.App. 2001).
¶ 16. Under the first Albright factor, the chancellor must consider the age, health, and sex of the child. In her findings under the first Albright factor, the chancellor stated the following:
The court should address the health and sex of the child to see if either party should have preference. Normally  I mean, your child's health is great and there's no  that doesn't weigh to either side. Normally the sex of the child, you know, there's a preference that a female child should be with her mother so that the mother can instruct her in the aging process of young girls, puberty, dating, all the things that Ms. Pearson said. But, quite frankly, each of you have acknowledged less than a year ago that that's not an issue. You think that whereas most of the time little girls should be with their moms, this mom has said this dad is capable of fulfilling those nurturing needs for this little girl. And therefore I'm not going to score in either of your favor.
This Court has affirmed an Albright analysis where the chancellor failed to label each Albright factor. See Turner v. Turner, 824 So.2d 652, 655 (¶¶ 8-9), 656(¶ 14) (Miss.Ct.App.2002). In Turner, the appellant claimed the chancellor erred by failing to consider the parenting skills factor. Id. at 655(¶ 9). On appeal, this Court found evidence in the chancellor's analysis and detailed findings that he did consider the parenting skills of each party in his ruling, even though he did not label the findings as parenting skills. Id. This Court stated "[w]hat the chancellor may have labeled the Albright factors is irrelevant" as there was supporting evidence corresponding to each factor. Id.
¶ 17. It is obvious that the chancellor was considering McKenna Claire's age and the tender years doctrine in her findings. Both parties correctly state in their briefs that the tender years doctrine, the presumption a child should be with their mother, has been eroded recently. See Mississippi Code Annotated section 93-5-24(7) (Rev.2004). It is inarguable that the chancellor considered the tender years doctrine during the analysis of the age of McKenna Claire. Although the chancellor did not label the age factor, she considered McKenna Claire's age when discussing her gender. As in Turner, there is evidence in this chancellor's ruling corresponding to the age factor. Turner, 824 So.2d at 655(¶ 9).
¶ 18. Additionally, Joy filed a motion for reconsideration alleging that the trial court misapplied the law and facts in its decision and that the trial court erred by placing too much weight on certain facts, substantively arguing the same two issues as on appeal. The chancellor held a hearing on the motion and clearly addressed McKenna Claire's age in her ruling.
¶ 19. Thus, Joy's argument that the chancellor failed to consider and make a finding on the age factor is without merit.

B. Physical and Mental Health and Age of the Parents
¶ 20. In her original ruling on the modification and on the motion for reconsideration, the chancellor found that the mental health factor weighed in favor of Steven. Joy argues that this was error. Joy claims that the chancellor awarded Steven this factor as punishment for the chancellor's belief that Joy entered into *185 the original custody agreement knowing she was going to move in the near future. Joy also argues that the evidence relied on by the chancellor is not supported by the record. In the alternative, Joy contends that the evidence relied upon in the modification hearing occurred before the original custody agreement and, thus, is barred from consideration.
¶ 21. In her rulings, the chancellor found that Joy's mental health had affected her decision-making abilities. There was testimony by Joy's mother and her sister to support the chancellor's ruling. They both testified that Joy was quiet and "dull" at a family birthday party shortly before the modification hearing. This behavior was a continuation of Joy's demeanor and mental health prior to the original custody agreement. During the modification hearing, Joy's mother testified that Joy went through a stage where she could not take care of herself. She also stated that Joy has not been herself for a long time. This assessment was corroborated by Joy's sister, who testified that Joy has not been herself in the past one-and-a-half years. She even stated that Joy has not taken motherly responsibilities seriously regarding McKenna Claire. Steven's attorney also elicited testimony from Joy that put her mental health into question. Joy testified that she is currently seeing a psychiatrist and taking medication for depression, a bi-polar disorder, and anxiety. These medications are also being taken to stabilize her mood swings. No testimony was given calling Steven's mental health in question.
¶ 22. Given these facts, the chancellor did not err in finding that the mental health factor favored Steven. Accordingly, this argument is without merit.[2]
¶ 23. THE JUDGMENT OF THE PIKE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
ROBERTS, J., Concurring in Part and in the Result:
¶ 24. I write separately to express my reasoning for concurring in part and in result only with issue one. I am compelled to emphasize that, not only was there no error on the chancellor's part when Joy and Steven Pearson's child custody agreement was modified, it was not necessary for the chancellor to determine either if a material change in circumstances existed or if there was an adverse effect on the child. Mississippi Code Annotated section 93-5-24(2), (3), (4) and (6) (Rev.2004) provides the guidelines for awarding joint physical and legal custody of children. Subsection (6) specifically provides, "[a]ny order for joint custody may be modified or terminated upon the petition of both parents or upon the petition of one (1) parent showing that a material change in circumstances has occurred." Miss.Code Ann. § 93-5-24(6) (emphasis added).
¶ 25. As noted by the majority, Steven and Joy were granted an irreconcilable differences divorce, and the two executed a child custody and property settlement *186 agreement that provided for joint legal and physical custody of their daughter. The chancellor incorporated that agreement into the divorce decree. The result of Steven's petition for modification of the agreement, in which he sought sole physical custody, and Joy's counterclaim for sole physical custody, was that they both were petitioning the court for modification or termination of the joint custody agreement.
¶ 26. Therefore, according to the plain language of section 93-5-24(6), the chancellor was neither required to evaluate whether there had been a material change of circumstances nor whether there was any adverse effect on the child. Just as parents can agree to joint physical custody, they may seek to have the joint custody agreement modified without showing a material change in circumstances. An evaluation of a material change becomes necessary when only one parent is seeking to modify a joint custody judgment. It was irrelevant that Joy did not specifically state in her counterclaim that she was seeking "a modification." The net effect of her counterclaim was that she was indeed seeking a modification of the agreement: she asked for sole physical custody of her daughter. Therefore, the chancellor was not obligated to evaluate whether there had been a material change. Based on the parties' petitions, I find that the chancellor could have simply applied the Albright factors and determined which parent was better suited to obtain sole custody of the child.
GRIFFIS, J., JOINS THIS OPINION.
NOTES
[1] We do not agree with the separate opinion's interpretation of Mississippi Code Annotated section 93-5-24(6) (Rev.2004). To date, there has been no Mississippi case law to support such an application. Additionally, we do not arrive at the same conclusion upon our reading of Mississippi Code Annotated section 93-5-24(6). Under Mississippi Code Annotated section 93-5-24(6), a joint custody agreement may be modified upon the petition of both parents, or upon one parent showing a material change in circumstances. In the present case, a joint petition for modification was not filed; each parent submitted their own petition alleging a material change in circumstances. They were not submitting to the court a petition for the chancellor to decide which parents would receive custody as the first provision of Mississippi Code Annotated section 93-5-24(6) would allow, they were submitting petitions for the court to determine whether a material change in circumstances has occurred. If both Joy and Steven lost their respective motions, the joint custody agreement would have been retained. We do not think this is how Mississippi Code Annotated section 93-5-24(6) is to be applied.

Moreover, the effect of such an interpretation would have unwarranted results. Judge Roberts's interpretation would allow the parties, not the chancellor, to determine whether there had been a material change in circumstances and whether that material change had an adverse effect of the child. What a lay person perceives to be a material change in circumstances and an adverse effect does not mean that it is such in the legal sense. The separate opinion's interpretation of the statute takes away from the chancellor the role of determining whether a material change in circumstances occurred and whether it had an adverse effect on the child, and places that duty in the hands of lawyers and lay persons. We do not believe the Legislature intended for such a result.
[2] We will not address the remaining Albright factors as these are the only factors raised by Joy on appeal.