# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01107-COA

**SURESA YOUNG TODD**                                                      **APPELLANT**

**v.**

**DERRIUM TODD**                                                            **APPELLEE**

DATE OF JUDGMENT:              06/22/2015
TRIAL JUDGE:                   HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:     TATE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       SARAH LYNN DICKEY
                               J. KEITH PEARSON
ATTORNEY FOR APPELLEE:         MILDRED J. LESURE
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       MODIFIED CHILD-CUSTODY
                               AGREEMENT, AWARDED APPELLEE
                               PHYSICAL CUSTODY, AND ORDERED
                               APPELLANT TO PAY CHILD SUPPORT
DISPOSITION:                   REVERSED AND REMANDED – 04/18/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     When Suresa Young Todd and Derrium Todd divorced, they agreed that they would

share joint physical and legal custody of their daughter.  But the agreement incorporated into

their divorce judgment did not include a custody schedule.  Following Derrium's successful

request for custody modification and physical custody of their child, Suresa claims the Tate

County Chancery Court mistakenly held that Derrium did not have to prove a material change

in circumstances adverse to the child's best interests.  We agree, so we reverse the

chancellor's judgment and remand the case for further consideration.

FACTS

¶2. Derrium and Suresa were married in September 2008. They lived with Derrium's parents in Coldwater, Mississippi, for a short time before moving nearby to Como, Mississippi. Their daughter was approximately one year old when they separated in late 2009. After the separation, Derrium and the child moved back into his parents' house. The record is unclear, but it appears as though Suresa remained in Como.

¶3. In 2010, Derrium earned an associate's degree and transferred to Mississippi State University in Starkville, Mississippi. The record contains conflicting accounts regarding where the child lived. Derrium and his parents testified that the child lived almost entirely with his parents.[1] However, Suresa and her mother testified otherwise. It was undisputed that the child began attending Head Start in Coldwater during 2011. Derrium moved back to Coldwater after he earned a bachelor's degree in accounting.

¶4. In December 2012, Derrium and Suresa filed their joint complaint for an irreconcilable-differences divorce and an agreement purportedly resolving all potential property, custody, and support issues. Per their agreement, they would share joint physical and legal custody of their daughter, but the agreement did not include a custody schedule, and they did not ask the chancellor to provide one. In March 2013, the chancery court entered a final judgment of divorce incorporating the agreement that the chancery court

---

[1] According to Derrium, he lived off of student loans, went back to Coldwater every other weekend and during breaks, and maintained two jobs to provide for all of his daughter's needs while he was at Mississippi State.

2

found "adequate and sufficient." It is undisputed that in December 2013, the child began living with Suresa during each week and Derrium each weekend. That arrangement continued after Derrium's May 2014 move from his parents' house to his own home in Horn Lake, Mississippi.

¶5. In August 2014, Derrium filed a complaint for physical custody. He claimed that custody modification was warranted because there had been a material change in circumstances. More specifically, Derrium claimed that Suresa had been living with her mother, he was concerned that Suresa was not caring for their daughter, and he "fear[ed] for her safety and care." Suresa responded with an answer and counterclaim for physical custody. According to Suresa, joint physical custody was no longer feasible because of the distance between her home and Derrium's.

¶6. The parties went to trial on May 22, 2015. The chancellor heard testimony from multiple people who generally described a child who was happy, thriving, and well-loved by both parents and her extended family, who were extraordinarily hesitant to say anything negative about Derrium or Suresa.[2] Ultimately, the chancellor entered the following ruling:

> Both parties have come in and alleged that it's unworkable and that they both want full custody of the child and want the noncustodial parent to pay child support. And so in a situation like that, the [c]ourt has to make a ruling about

---

[2] Derrium was twenty-six years old at that time. He was working as an assistant branch manager at a Regions Bank location in Memphis, Tennessee. Suresa was twenty-seven, and she anticipated earning a degree in social work from the University of Mississippi. Approximately three months earlier, she had given birth to another child whose father, a National Guardsman, had recently been sentenced to prison for possession of marijuana. As of the trial, Suresa had been living with her mother in Senatobia, Mississippi, so her mother could help take care of the newborn baby. But Suresa said that she still had her Como residence, and she was planning to move back into it shortly after the trial.

3

what is in the best interest of the child. And, actually, in a case like that, no one has an automatic [h]ead [s]tart. This is not like a case that [Suresa] was awarded custody and [Derrium is] coming in trying to change it and he would have to show a substantial and material change in circumstances to change that, or that [Derrium] had custody and [Suresa is] coming in and asking to change it, saying that there is a substantial and material change in circumstances that adversely affects the child. In this situation, we just have a divorce decree with a custody arrangement that is not working again. So I have to do the same analysis I would have to do if this was the first time custody had ever been awarded to either one of you.

After conducting an *Albright*[3] analysis, the chancellor awarded Derrium physical custody of the child. The chancellor awarded Suresa liberal visitation, and sua sponte[4] ordered her to pay child support. The judgment memorializing the chancellor's bench opinion provided, among other things, that "[n]either party was granted permanent physical custody in the divorce decree and said decree remained silent as to where the child would reside." Suresa appeals.

## DISCUSSION

¶7.     According to Suresa, it was necessary to find a material change in circumstances adverse to the child's best interest before modifying custody. In domestic-relations cases, we "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion . . . or [applied] an erroneous legal standard[,]" or the chancellor "was manifestly wrong" or arrived at a decision that was "clearly erroneous." *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010). We review questions of law de novo. *Id*. As always, we are mindful that "the polestar

---

[3] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

[4] Derrium's complaint did not include a request that Suresa pay child support.

4

consideration in child[-]custody cases is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005.

¶8.     It was clearly erroneous for the chancellor to conclude that there had not been a prior custody determination. Derrium and Suresa's agreement[5] to share joint physical and legal custody of their daughter was incorporated in the divorce judgment, despite the fact that the agreement did not specify how the joint physical and legal custody would be executed. In other words, it did not specify how each parent would share the physical custody of their child. Nevertheless, neither of them sought to set aside the divorce judgment on the basis that the chancery court never should have found it "adequate and sufficient." Instead, they both filed separate requests to modify custody under different rationales, and they each claimed they should have physical custody of their child.[6]

¶9.     "[I]n joint custody cases, [the Mississippi Supreme] Court has stated that . . . to modify child custody, it must be proven that a material change in circumstances has occurred that adversely affects the welfare of the child." *Porter v. Porter*, 23 So. 3d 438, 447 (¶23) (Miss. 2009). Furthermore, the material change in circumstances adversely affecting a child must have occurred since the prior custody award. *Harper v. Harper*, 926 So. 2d 253, 255

---

[5] "There shall be a presumption that joint custody is in the best interest of a minor child where both parents have agreed to an award of joint custody." Miss. Code Ann. § 93-5-24(4) (Rev. 2013).

[6] *See Pearson v. Pearson*, 11 So. 3d 178, 181-82 n.1 (Miss. Ct. App. 2009) (providing that a *joint* petition for custody modification is necessary to trigger Mississippi Code Annotated section 93-5-24(6) (Rev. 2013), which states that "[a]ny order for joint custody may be modified or terminated upon the petition of both parents or upon the petition of one (1) parent showing that a material change in circumstances has occurred").

(¶7) (Miss. Ct. App. 2006). Consequently, the chancellor also applied an erroneous legal standard when she concluded that it was not necessary for either party to demonstrate that a material change in circumstances occurred adverse to their child's best interest. *See Rutledge v. Rutledge*, 487 So. 2d 218, 220 (Miss. 1986) (holding that modification of joint custody is "manifestly erroneous" without first finding that there had been a material change in circumstances adversely affecting a child). We must reverse the chancellor's judgment, and remand the case to the chancellor for a decision on the merits of Derrium's complaint and Suresa's counterclaim.

¶10. We also note that Derrium's complaint did not include a request that Suresa pay child support. The supreme court has held that it is error for a chancellor to sua sponte order a party to pay child support "absent any notice that [the party] would be required to defend such a proposition and absent any notice that the court was considering ordering [the party] to pay child support." *Morris v. Morris*, 359 So. 2d 1138, 1139 (Miss. 1978). Suresa's own request for child support did "not create notice that should she fail in her claims for child support, that she [would become] subject solely by virtue of her own petition to having a child support obligation placed on her." *See Massey v. Huggins*, 799 So. 2d 902, 910 (¶31) (Miss. Ct. App. 2001). Consequently, we must also reverse that aspect of the chancellor's judgment.[7]

¶11. One final matter bears discussion. If, on remand, the chancellor finds no merit to

---

[7] Our decision should not be construed as an adjudication that the chancellor would be prohibited from allowing Derrium to amend his complaint on remand. That issue has not been raised on appeal, so we decline to comment upon it aside from stating that it is a matter left to the chancellor's sound discretion.

6

Derrium's complaint or Suresa's counterclaim, Derrium and Suresa will still have joint physical custody of their child. It will be necessary to determine a custody schedule, as it was probably error to find that the parties' agreement was "adequate and sufficient" without one. *See Selman v. Selman*, 722 So. 2d 547, 554 (¶33) (Miss. 1998) (holding that plain error resulted where a chancellor's child-support award was ambiguous, and it was necessary to remand the issue for clarification "to prevent friction between the parties"). Derrium and Suresa could resolve the issue through an agreement that the chancellor finds "adequate and sufficient" before incorporating it into an amended divorce judgment. *See* Miss. Code Ann. § 93-5-2(2) (Rev. 2013). Alternatively, they could allow the chancellor to resolve the issue for them. *See* Miss. Code Ann. § 93-5-2(3) (Rev. 2013). Under either circumstance, a joint-physical-custody schedule should provide each parent with "significant periods of physical custody . . . in such a way so as to assure [their] child of frequent and continuing contact with both parents." *See* Miss. Code Ann. § 93-5-24(5)(c) (Rev. 2013). But that does not necessarily mean that each parent would have to get *equal* time with their daughter. *See Collins v. Collins*, 20 So. 3d 683, 692 (¶44) (Miss. Ct. App. 2008).

¶12. **THE JUDGMENT OF THE CHANCERY COURT OF TATE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., ISHEE, CARLTON, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. GRIFFIS, P.J., BARNES AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**