831 So.2d 1179 (2002)
Sandra M. CREEL f/k/a Sandra K. Cornacchione, Appellant
v.
Joseph A. CORNACCHIONE, Appellee.
No. 2001-CA-00116-COA.
Court of Appeals of Mississippi.
December 3, 2002.
*1180 James R. Hayden, Hattiesburg, Samuel S. Creel, Jr., for appellant.
B. Ruth Johnson, Jackson, for appellee.
Before KING, P.J., LEE and IRVING, JJ.
*1181 IRVING, J., for the Court.
¶ 1. Sandra Creel appeals from an adverse judgment from the Chancery Court of Pike County whereby the court denied her prayer for modification of a previous child custody order. Seeking reversal, Sandra presents two issues for this Court's consideration: (1) whether the trial court erred in its judgment in denying a modification of the child custody arrangements and in failing to change the custody from Appellee to Appellant and (2) whether the trial court erred in ordering the Appellant to pay Appellee's attorney's fees in the sum of $4,600.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Sandra and Joseph Cornacchione were divorced on June 29, 1995. At the time of the divorce, the parties had two minor children, Nicole and Cheryl. A child custody, child support and property settlement agreement was incorporated in the divorce decree. As per the agreement, Joseph was awarded legal and physical custody of the two girls, subject to Sandra's right of visitation.
¶ 4. Since the divorce in 1995, Sandra has filed four actions against Joseph regarding custody and visitation. The first action, styled "Petition for Citation of Contempt and for Related Relief," was filed on November 8, 1995, and alleged that Joseph was in contempt of court for his failure and refusal to abide by the terms and conditions of the judgment of divorce. The complaint also alleged that Joseph harassed and vexed her, demeaned and degraded her in the presence of the children, interfered with telephone calls between her and the girls, refused to inform her of the girls' extracurricular school-related activities, and refused to allow her to attend those activities.
¶ 5. The second action, entitled "Petition for Emergency Relief," was filed on December 8, 1995. In this action, Sandra alleged that due to a change in the school Christmas holiday schedule, the terms of the child custody and visitation agreement would only allow her to spend three days of the girls' fourteen-day break with them. Sandra petitioned the court to amend the agreement to allow a more equitable sharing of time during the Christmas season. The matters raised in this petition were resolved by an agreed order entered on January 10, 1996. In this order, the trial court made some modifications to the Christmas visitation schedule. The court ordered that if the school calendar for recess and resumption of school does not coincide with the agreed-upon visitation schedule, the party, whose visitation has been cut short, shall have the children for a period of time equal to the period of time enjoyed by the other.
¶ 6. On December 12, 1995, Joseph filed a response to Sandra's petition for contempt as well as a motion seeking to have Sandra held in contempt. In his response, he asked that he be awarded attorney's fees for defending what he considered to be baseless allegations. In his motion for contempt, he asked the court to hold Sandra in contempt for disrespecting his privacy, causing the children to become estranged from him, and videotaping visitation exchanges for the purpose of harassment.
¶ 7. Apparently, during most of 1996, the parties engaged in discovery and no hearing was held on either of the actions filed by Sandra and Joseph, respectively, in November and December 1995.
¶ 8. On December 4, 1996, Sandra filed her third action against Joseph. In this action, styled "Motion for Citation of Contempt, Modification of Final Judgment of *1182 Divorce and for Related Relief," Sandra alleged that Joseph was not complying with the terms of the child custody agreement, that he was still harassing, vexing, humiliating and demeaning her in the presence of the children, that he had created a hostile environment, that he was using the minor children to cause conflict with her, that he was denying her access to telephone communication with the girls, and that he was refusing to inform her of the children's school and social activities. She also asked the court to modify and change the custody of the children for the reasons set forth above. Joseph responded to this motion and alleged, inter alia, that this motion, as well as Sandra's November 8, petition for contempt, were violative of Rule 11 of the Mississippi Rules of Civil Procedure and of the Litigation Act of 1988. He preserved his right to seek attorney's fees, expenses sanctions, and court costs.
¶ 9. On February 4, 1997, the trial court commenced a hearing on the various actions pending before it but was unable to complete the hearing; consequently, the matters were continued for further hearing on May 20, 1997. However, at the conclusion of the hearing on February 4, the trial court, by temporary order, made some modifications to the final judgment to remain in place until the matters were finally resolved.
¶ 10. When the hearing was resumed on May 20, 1997, Sandra alleged that the children were being emotionally and psychologically abused by Joseph. As a result of this allegation, the trial judge stopped the hearing and subsequently contacted the Pike County Department of Human Services. The court requested that the department investigate the allegations. In addition, the court appointed Donna Miller, licensed social worker, as guardian ad litem to investigate the allegations. After the investigation was completed, Miller reported her findings to the court. She reported that the Jones and Pike County Department of Human Services had also investigated the allegations of emotional abuse and found that they were unsubstantiated. She concurred in that finding and further reported that she had not discovered anything in her investigation that would give rise to a need to disrupt the girls' regular routine.
¶ 11. In the meantime, on June 22, 2000, Sandra filed her fourth and final action against Joseph. This fourth action was another motion for contempt and for modification of the final judgment of divorce. This motion alleged that Joseph allowed her only minimal contact with the girls, that he refused to allow the girls to call her after she provided them with a toll free telephone number as well as a cellular telephone, that he interfered with phone conversations, and that he refused to inform her of the girls' activities, school events, or holiday schedules. Sandra also alleged that Joseph scheduled activities during Sandra's visitation times and interfered with the development of the mother-daughter relationship. Sandra moved the court to change custody for the above stated reasons. Joseph responded to this motion and again asked for attorney's fees and expenses for having to respond to Sandra's allegations. Additionally, Joseph filed a separate motion for attorney's fees and expenses.
¶ 12. The court heard Sandra's last motion, as well as Joseph's motion for attorney's fees, on December 12, 2000, and on December 19, 2000, entered its judgment, finding that "there was no evidence whatsoever to support Mrs. Creel's action regarding denial of or interference with summer visitation rights." The court also found that there was no proof that her telephone privileges were interfered with. *1183 Furthermore, the court noted that Mrs. Creel stopped court proceedings, and the court appointed a guardian ad litem to investigate what were groundless accusations. Finally, the court awarded Joseph attorney's fees in the amount of $4,600. From this judgment, Sandra has perfected her appeal.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Child Custody

¶ 13. Sandra argues that the lower court erred by failing to modify custody in her favor. She further contends that the court failed to consider the Albright factors in considering its decision. Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).
¶ 14. Our standard of review is limited when it concerns a chancellor's decision to deny a request for modification of custody. We can reverse only when a chancellor's decision is either manifestly wrong or clearly erroneous, or when the chancellor has applied an erroneous legal standard. Brocato v. Brocato, 731 So.2d 1138, 1140 (¶ 8) (Miss.1999).
¶ 15. We review the prerequisites for modifying a child custody decree. First, a party must show that since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Smith v. Jones, 654 So.2d 480, 486 (Miss.1995). Second, the party must also show that the best interest of the child requires a change in custody. Id. We further note that not every change in circumstances is so adverse that a modification of custody is warranted; however, the chancellor must consider the circumstances of each case in light of the totality of the circumstances. Ash v. Ash, 622 So.2d 1264, 1266 (Miss. 1993). However, "[i]n all child custody cases, the polestar consideration is the best interest of the child." Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994).
¶ 16. Here, Sandra did not prove that there was a material change in circumstances adverse to the children. Sandra's proof centered around Joseph's alleged denial of visitation and interference with telephone communications as reasons why the custody should change. Thus, specific findings of fact under the Albright factors by the chancellor were unnecessary since Sandra did not present evidence of any material change in circumstances, much less any change which was arguably adverse to the best interest of the children.
¶ 17. Sandra further suggests that the judgment did not address other issues raised in the pleadings from November 18, 1995, until December 18, 2000. She also suggests that the judgment entered on December 18, 2000, only addressed the issue of attorney's fees in favor of Joseph. However, she does not specifically raise which issues that were not addressed. "Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them." Mason v. State, 440 So.2d 318, 319 (Miss. 1983). We therefore decline to address any issues not set forth by Sandra.

2. Attorney's Fees

¶ 18. Sandra argues that the court erred in awarding Joseph attorney's fees. Sandra is correct in her assertion that, in general, one must show that he is unable to pay either due to lack of income or other valid reasons before one can be awarded attorney's fees. Rogers v. Rogers, 662 So.2d 1111, 1116 (Miss.1995). However, in contempt actions, even if the contempt deals with domestic relations *1184 matters, a chancellor has the authority to make the prevailing party whole by awarding attorney's fees without regard to the ability to pay. Rogers, 662 So.2d at 1116. The award of attorney's fees is largely within the sound discretion of the chancellor. Wright v. Stanley, 700 So.2d 274, 282 (Miss.1997). The chancellor ruled in favor of Joseph on Joseph's motion for contempt against Sandra. Therefore, we cannot say that the chancellor abused his discretion in awarding attorney's fees in this matter.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF PIKE COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.