877 So.2d 450 (2003)
Catherine Ann ELLIOTT, Appellant,
v.
George Woods ELLIOTT, Jr., Appellee.
No. 2002-CA-00846-COA.
Court of Appeals of Mississippi.
October 28, 2003.
Rehearing Denied February 3, 2004.
Certiorari Denied July 15, 2004.
*452 Stephen L. Beach, Jackson, attorney for appellant.
Debra Lynn Allen, Jackson, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
BRIDGES, J., for the Court.
¶ 1. George and Catherine (also referred to in the record as Catharine and hereinafter called "Cathy") Elliott were divorced by a judgment of divorce citing irreconcilable differences. There were two children born to the marriage, Justin and Amie. There was a judgment modifying the original judgment of divorce and the court awarded joint legal and physical custody of the two children to the parties. The judgment modified visitation so that the parties shared parenting with Cathy having the children three days a week and twenty-four weekends a year and George having the children two days a week and twenty-eight weekends a year.
¶ 2. Cathy filed a petition for modification stating that she had moved to Flagstaff, Arizona, because she was in a "desperate financial situation" and had to move to earn more money. George filed a counterclaim for contempt and modification seeking to have Cathy held in contempt and seeking to modify the custodial arrangement to award him sole physical and legal custody of Justin and Amie.
¶ 3. The chancellor found Cathy to be in contempt of court, found that the move to Arizona constituted a material change in circumstances such that modification of the custody arrangement was warranted, and awarded George sole physical and legal custody. Cathy was awarded certain specific visitation rights. Cathy filed a motion for a new trial, or in the alternative, to alter or amend the judgment which was later denied by the chancellor. Cathy now appeals to this Court.

STATEMENT OF THE ISSUES
I. WHETHER THE CHANCERY COURT ERRED IN GRANTING THE COUNTERCLAIM FOR MODIFICATION AND CONTEMPT OF THE FINAL JUDGMENT OF THE DIVORCE AND AWARDING FULL CUSTODY OF THE MINOR CHILDREN TO GEORGE ELLIOTT.
II. WHETHER THE CHANCERY COURT ERRED IN FINDING CATHERINE ELLIOTT IN CONTEMPT RESULTING IN INCARCERATION.

FACTS
¶ 4. Cathy and George Elliott were divorced on grounds of irreconcilable differences *453 on June 19, 1997, in the Chancery Court of Madison County. Cathy and George had two children born of the marriage, Justin Garrit Elliott and Amie Catharine Elliot. Originally, Cathy had primary custody under the technical terms of the agreement and George had visitation. However, within two to three weeks after the divorce, Cathy and George established a joint parenting relationship, which rotated physical custody to the benefit of all and with the children never having to attend daycare.
¶ 5. On issues surrounding visitation rights and payment of insurance and medical expenses, the parties each filed petitions for contempt and modification of the divorce decree. After a hearing, the chancellor held that Cathy was in contempt of court for violation of the final judgment of divorce regarding Father's Day visitation. In addition, the court also modified said final judgment to change custody of the Elliotts' minor children to joint legal and physical custody and rearranged the visitation rights of Cathy and George.
¶ 6. Following the decision of the chancellor, Cathy filed a motion for a new trial, amendment of judgment, and for findings of fact and conclusions of law. After a hearing was conducted on this motion, the chancellor elaborated on his findings of fact but made no conclusions of law on the record. The chancellor also reaffirmed his decision to change custody to joint legal and physical custody with primary physical custody to Cathy.
¶ 7. After applying for several new positions in her capacity as a registered nurse, Cathy received an offer of employment in Flagstaff, Arizona, that would increase her income from around $38,000 to around $56,000 per year. Cathy filed a petition for modification to change George's visitation rights based on her move to Arizona and she also filed a notice of change of address pursuant to Rule 8.06 of the Mississippi Uniform Rules of Chancery Court.
¶ 8. In response to Cathy's move, George filed a counterclaim for contempt and modification and alleged that Cathy was in contempt of court for moving to Arizona and that the chancery court should grant full custody of the minor children to him for this action. George's counterclaim also requested a temporary order placing Cathy in jail for moving the children to Arizona.
¶ 9. A hearing was held on the motions filed by the parties before Chancellor Gail Shaw-Pierson, who was assigned to the case after Chancellor Lutz withdrew as the chancellor. At the conclusion of the testimony given by witnesses, the chancellor immediately ordered that Cathy be placed in the custody of the Madison County Sheriff and incarcerated until the minor children were brought back to Mississippi. After arrangements were made to transport the minor children back to Mississippi, Cathy was released from jail and the court reconvened the hearing.
¶ 10. At the conclusion of the hearing, the chancellor opined that Cathy had come before the court with unclean heads and denied her petition for modification. She also found that Mississippi was the "home state" of the minor children and that the actions of Cathy, in moving to Arizona with the children, was "tantamount to parental kidnapping but for the grant of joint physical and legal custody." She then granted sole physical and legal custody of the minor children to George with specified visitation granted to Cathy and also released Cathy from incarceration.
¶ 11. Again, Cathy filed a motion for a new trial or in the alternative to alter or amend the judgment, which motion was denied by order of the court. Cathy now appeals to this Court.

*454 ANALYSIS

I. WHETHER THE CHANCERY COURT ERRED IN GRANTING THE COUNTERCLAIM FOR MODIFICATION AND CONTEMPT OF THE FINAL JUDGMENT OF THE DIVORCE AND AWARDING FULL CUSTODY OF THE MINOR CHILDREN TO GEORGE ELLIOTT.
¶ 12. Our standard of review of the decision of a chancellor is limited and we will reverse only where the decision is manifestly wrong or clearly erroneous or the chancellor has applied an erroneous legal standard. Creel v. Cornacchione, 831 So.2d 1179, 1183(¶ 14) (Miss.Ct.App.2002).
¶ 13. In considering whether a change in custody is warranted, the Court looks to the following:
First, a party must show that since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Smith v. Jones, 654 So.2d 480, 486 (Miss.1995). Second, the party must also show that the best interest of the child requires a change in custody. Id. We further note that not every change in circumstances is so adverse that a modification of custody is warranted; however, the chancellor must consider the circumstances of each case in light of the totality of the circumstances. Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). However, "[i]n all child custody cases, the polestar consideration is the best interest of the child." Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994).
Creel, 831 So.2d at 1183(¶ 15).
¶ 14. This Court in Sanford v. Arinder stressed that "in a custody modification proceeding, the non-custodial parent's request does not simply mean a re-weighing of the Albright factors to see who now is better suited to have custody of the child.[1] Although a re-weighing of Albright factors may be triggered, in reviewing the circumstances, there must be shown, we reiterate, a material change and not just a change in circumstances, that has had an adverse affect on the child and which requires, or mandates, a change in custody for the best interests of the child." Sanford v. Arinder, 800 So.2d 1267, 1272(¶ 16) (Miss.Ct.App.2001).
¶ 15. As such, the non-custodial parent must pass a three-part test: "a substantial change in circumstances of the custodial parent since the original custody decree, the substantial change's adverse impact on the welfare of the child, and the necessity of the custody modification for the best interest of the child." Id. at 1272(¶ 15) (quoting Brawley v. Brawley, 734 So.2d 237, 241(¶ 12) (Miss.Ct.App.1999)). This test has routinely been utilized by this Court in the area of child modifications. See Sanford, 800 So.2d at 1271(¶ 15); Brawley, 734 So.2d at 241(¶ 12).
¶ 16. The Mississippi Supreme Court explained in Kavanaugh v. Carraway, that when the totality of the circumstances displays *455 a material change in the overall living conditions in which the child is found which are likely to remain changed in the foreseeable future and such change adversely affects the child, a modification of custody is legally proper. Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983). The Mississippi Supreme Court also stated: "It is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is [a] sufficient basis to seriously consider the drastic legal action of changing custody." Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss.1983).
¶ 17. With this legal standard in mind, we turn to the present case. When looking to the first part of the modification test, whether there was a substantial change in circumstances of the custodial parent since the original custody decree was entered, we look to several previous cases decided by this Court.
¶ 18. Although the appellate courts have repeatedly held that the mere moving of one party or the other is insufficient grounds for modification of child custody, those cases involved visitation. There are cases, however, which state that the moving of one party is sufficient grounds for modification because it makes joint custody impractical or impossible.
¶ 19. In the most recent case, Rinehart v. Barnes, 819 So.2d 564 (Miss.Ct.App.2002), the parties, Beth and Kevin, shared legal custody of their daughter, Kristina. Id. at 565(¶ 1). The custody arrangement, where Kristina would stay with Beth for one week and Kevin the next week, lasted approximately four years after the divorce. Id. at (¶ 3). It was then that Kevin moved to Tennessee and filed a petition for modification of custody and Beth filed a counterclaim seeking the same relief. Id. The chancellor awarded Kevin full custody of Kristina and his reasoning was that the shared custody agreement between parents of a child of school age, living in two different states, would be quite difficult to maintain. Id. at 566(¶ 7). "The chancellor concluded that the best interest of the child dictated that primary custody should be modified, and therefore, Kevin should become the custodial parent of Kristina." Id. at 567(¶ 10) Beth appealed that modification and this Court affirmed the chancellor's decision. Id. at (¶¶ 10-11).
¶ 20. Likewise, in the case of Massey v. Huggins, 799 So.2d 902, 906(¶ 14) (Miss.Ct.App.2001), this Court found that a geographical move by one parent which makes the application of a joint custody award impractical or impossible is a material change in circumstances. See also Lackey v. Fuller, 755 So.2d 1083, 1089(¶ 29) (Miss.2000); Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996); McRee v. McRee, 723 So.2d 1217, 1219 (¶¶ 5-8) (Miss.Ct.App.1998).
¶ 21. In her findings of fact, the chancellor, in this case, found that it was most appalling that Cathy unilaterally effected a modification of the court order by moving the children to Phoenix, Arizona without the consent of either the other party or the court. The court further stated that Cathy's actions were "tantamount to parental kidnapping but for the grant of joint physical and legal custody." The chancellor concluded that Cathy's move to the State of Arizona was a material change in circumstances which warranted a modification of the prior court order and that in light of the prior rulings regarding the selfish behavior of Cathy, the court found that it was in the best interest of the children that they be placed in the primary physical and legal custody of their father.
*456 ¶ 22. Having found that the impracticality of the present joint physical custody arrangement was a material change in circumstances adverse to the children's best interests, we now turn to whether a change in custody is needed to protect the best interests of the children.
¶ 23. The chancellor in her findings of fact stated that "in light of the prior rulings regarding the selfish behavior of Catharine and the most recent conduct, the court finds it is in the best interest of the children that they be placed in the primary physical and legal custody of their father, George Elliott." Although the chancellor does not make many specific findings in her last ruling, the record is brimming with examples of Cathy's behavior that is adverse to the children's best interests, as set out in the findings of fact and conclusions of law made by Chancellor Lutz, as well as Chancellor Shaw-Pierson.
¶ 24. This Court in Creel rejected the notion that allegations of denial of visitation were sufficient grounds for modification of custody. Creel, 831 So.2d at 1183(¶ 16); see also Spain v. Holland, 483 So.2d 318, 321 (Miss.1986) (move to another state which effectively curtailed non-custodial parent's visitation rights "legally irrelevant to the matter of permanent custody"). The proof in this case rose to that level. It became virtually impossible for the father, George, who had joint custody to have custody of and visitation with his children. Certainly, the best interests of the children were served by this decision.
¶ 25. After reviewing the three prong modification test set out in Sanford, 800 So.2d at 1271(¶ 15), we find that the court below was well within its discretion to modify the custody agreement and grant full physical and legal custody to George. Therefore, this Court finds this issue to be without merit.

II. WHETHER THE CHANCERY COURT ERRED IN FINDING CATHERINE ELLIOTT IN CONTEMPT RESULTING IN INCARCERATION.
¶ 26. "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Varner v. Varner, 666 So.2d 493, 496 (Miss.1995). A citation of contempt is proper when "the contemnor has willfully and deliberately ignored the order of the court." Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997). The factual findings of the chancellor in civil contempt cases are affirmed unless manifest error is present. Purvis v. Purvis, 657 So.2d 794, 797 (Miss.1994) (citing Caldwell v. Caldwell, 579 So.2d 543, 545 (Miss.1991)). "This Court will not reverse a contempt citation where the chancellor's findings are supported by substantial credible evidence." Goodson v. Goodson, 816 So.2d 420, 423(¶ 3) (Miss.Ct.App.2002).
¶ 27. The chancellor found that Cathy was in contempt of court for violation of a prior court order wherein the court established joint physical, and also joint legal custody for the benefit of the minor children alleging that the actions of Cathy in removing the minor children from the jurisdiction to the State of Arizona prohibited "George from exercising visitation with the children and his joint custodial and joint legal rights." The chancellor also stated that based on the testimony of the parties that Cathy had been in "willful contumacious contempt of this court by exercising blatant disregard for the orders and authorities of this court, by secreting her actions and willfully removing the minor children that are within the jurisdiction of this court from the jurisdiction of this state and taking them to the state of *457 Arizona, thereby depriving their father of the right to exercise joint physical and legal custody of these minor children as previously ordered of this court." After finding Cathy to be in contempt, the chancellor immediately remanded her to the custody of the Sheriff's Department of Madison County to be incarcerated and detained until the minor children were brought back into the jurisdiction of the lower court.
¶ 28. On appeal, Cathy argues that her incarceration was an abuse of discretion, manifest error, and was a result of a complete lack of understanding of Mississippi law. She also contends that the judgment modifying decree, dated October 30, 2000, was a vague and nebulous order. In addition, Cathy contends that she should never have been jailed in this matter even with a finding that she was in contempt of the prior orders of the Madison County Chancery Court.
¶ 29. The judgment modifying the divorce decree, dated October 30, 2000, which is the basis for the contempt action discussed herein, states that Cathy will have the children three days a week which equals one hundred fifty-six days a year. Cathy will also have the children for twenty-four weekends, which equals forty-eight days a year. The total amount of time Cathy will have with the children is two hundred and four days a year. The amount of time George will have with the children is two days a week, which equals one hundred and four days a year. George will also have the children for twenty-eight weekends, which equals fifty-six days a year. The total amount of time George will have with the children is one hundred sixty days a year. Therefore, Cathy has custody of the children fifty-seven percent of the time and George has custody forty-three percent of the time.
¶ 30. In the present case, while we are in agreement that the chancellor made proper findings in all matters with respect to Cathy's removal of the children from the jurisdiction of the Chancery Court of Madison County under the terms and arrangements of the joint custody order, we disagree that Cathy should have been held in contempt and find the chancellor erred in making such finding. However, that matter is now moot and is not sufficient error for reversal where an order provides for joint custody without any provision for prohibition of removal of the child or children from the State of Mississippi. Contempt is not the proper action against such party for removing the child or children from the state and incarceration would be a severe punishment for an order that did not make the removal a violation. Therefore, we are of the opinion that the chancellor erred in holding Cathy in contempt, but such error was not reversible error.
¶ 31. We affirm.
¶ 32. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] In Albright, the factors to assist courts in determining custody are as follows: "health & sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; moral fitness of parents; the home, school, and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship." Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).