936 So.2d 429 (2006)
Janice Amanda (Winter) FRANKLIN, Appellant
v.
Robert Milner WINTER, Appellee.
No. 2005-CA-00082-COA.
Court of Appeals of Mississippi.
August 8, 2006.
*430 Thomas Wright Teel, Biloxi, attorney for appellant.
G. Charles Bordis, attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Janice (Winter) Franklin and Robert Winter were married on February 14, 1997, and divorced on September 9, 1999. Their divorce settlement provided for joint legal and physical custody of their daughter, Shanna. On June 28, 2002, Winter filed a complaint to modify the custody agreement, alleging that changes in circumstances necessitated a revision of the custody agreement. After a trial, the Jackson County Chancery Court modified the custody agreement and awarded physical custody to Winter and gave Franklin and Winter joint legal custody of the children. Aggrieved, Franklin appeals and contends that the court erred in "its use and application of the test for a custody modification."
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Some time after her divorce from Winter, Franklin remarried and moved to Jacksonville, Arkansas, near where her current husband, who is a member of the United States Air Force, is stationed. The chancellor found that "the parties have been exchanging the child by traveling back and forth from Jackson County, Mississippi to Little Rock, Arkansas every few months...." Dissatisfied with that arrangement, Winter filed his petition for modification of the custody order on June 28, 2002.
¶ 4. After several unsuccessful attempts to bring the matter to trial, the court ultimately heard the case and issued its findings of fact and conclusions of law on July 9, 2004. That judgment granted primary legal and physical custody to Winter. Thereafter, Franklin filed a motion for reconsideration. A hearing was held in response to Franklin's motion. On December 7, 2004, the court modified its order to leave physical custody with Winter, and joint legal custody with both the parents.
¶ 5. Additional facts, as necessary, will be related during our discussion of the issue.

ANALYSIS AND DISCUSSION OF THE ISSUE

Standard of Review
¶ 6. Our review of a chancellor's custody determination is limited: "A chancellor must be manifestly wrong, clearly *431 erroneous, or apply an erroneous legal standard in order for [us] to reverse." Johnson v. Gray, 859 So.2d 1006, 1012(¶ 31) (Miss.2003) (citing Mabus v. Mabus, 847 So.2d 815, 818(¶ 8) (Miss. 2003)).

Modification of Custody Order
¶ 7. In "`modification cases, as in original awards of custody,' we never depart from our polestar consideration: the best interest and welfare of the child." Id. at 1013(¶ 33) (quoting Riley v. Doerner, 677 So.2d 740, 744 (Miss.1996)). However, modification issues are different from original custody determinations:
[We have] emphasized that the request for modification "does not simply mean a re-weighing of the Albright factors to see who now is better suited to have custody of the child ... there must be shown . . . a material change, not just a change in circumstances, that has had an adverse affect [sic] on the child and which requires, or mandates, a change in custody for the best interests of the child."
Beasley v. Beasley, 913 So.2d 358, 361(¶ 8) (Miss.Ct.App.2005) (quoting Sanford v. Arinder, 800 So.2d 1267, 1272(¶ 16) (Miss.Ct. App.2001)). In order to succeed on a complaint for modification, "the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." Mabus, 847 So.2d at 818(¶ 8) (citing Bubac v. Boston, 600 So.2d 951, 955 (Miss. 1992)).
¶ 8. Franklin argues that the court in this case "made a fundamental, legal error in how it approached the analysis of this case, failing to apply the stringent requirements of a custodial modification and, instead, analyzing the facts as if an initial custody determination under Albright." However, we note that, although the court in this case devotes a majority of its opinion to discussing the Albright factors, the court did acknowledge and address the above test for modification of a custody order. Specifically, the court found that "[t]he present arrangement is impractical and economically prohibitive. To continue the current visitation schedule, necessitates the child changing from school to school and changing her place of residence from the stability standpoint and would not be in the child's best interest as well as the other grounds alleged by the father for modification." Basically, the court found that Franklin's move "some 500 miles away" to Arkansas constituted a material change to the detriment of the best interests of Shanna.
¶ 9. Although Franklin contends that a parent's move is not a "substantial change in circumstance," we note that this Court has determined differently in recent cases. In Elliott v. Elliott, 877 So.2d 450, 455-56(¶¶ 19-25) (Miss.Ct.App.2003), a case where a mother and father shared joint physical custody of their children, we found that a chancellor did not abuse her discretion in awarding primary physical custody to a father after the mother moved to Flagstaff, Arizona. In so holding we noted that:
Although the appellate courts have repeatedly held that the mere moving of one party or the other is insufficient grounds for modification of child custody, those cases involved visitation. There are cases, however, which state that the moving of one party is sufficient grounds for modification because it makes joint custody impractical or impossible.
Id. at 455(¶ 18).
¶ 10. Franklin contends that the divorce settlement gave her de facto physical *432 custody because the times of custody set out for Winter were akin to a standard visitation schedule. This is important because, if Franklin had primary physical custody, then Winter had only visitation rights, and we would likely find that Franklin's move is not sufficient grounds for modification of the custody order. However, since the record does not contain a copy of the party's divorce settlement, we cannot determine the nature of the original custody agreement. Both parties agree that the custody was termed as "joint" physical custody. Franklin contends in her brief that it is clear from the wording of the settlement that she had primary physical custody, but "cases on appeal must be decided on the facts contained in the record, not on assertions made in the briefs. The burden falls on the appellant to ensure there is sufficient evidence in the record to support an assertion of error." McDerment v. Miss. Real Estate Comm'n, 748 So.2d 114, 120(¶ 19) (Miss.1999) (citations omitted). Since there is no copy of the settlement agreement in the record, there is insufficient evidence for this court to determine that Franklin had de facto primary physical custody of her child. Since the chancellor in this case found that "Shanna . . . has been in the joint, legal and physical posture since the divorce of September 9, 1999," we defer to the chancellor's finding that the parties shared joint physical custody of Shanna prior to the modification order.
¶ 11. According to recent cases, the moving of one party some distance away can constitute a material change in circumstances sufficient to warrant the modification of a custody agreement when the parties at issue share joint physical custody of the child, as is the case in the case at bar. Since we have found that the record establishes that the parties shared joint physical custody, we find that the chancellor in this case did not err in finding that Franklin's move to Arkansas constitutes a material change that makes the sharing of joint physical custody of Shanna unworkable. Although the chancellor in this case spent much time focusing on the factors found in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), the chancellor also addressed the material change necessary in order to alter the custody order. After reviewing all the evidence presented, the court found that it was in Shanna's best interest for primary physical custody to be granted to her father. We cannot say that the chancellor's conclusion was "clearly erroneous" or applied "an erroneous legal standard." Therefore, we affirm the chancellor's grant of custody to Franklin.
¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.