# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01639-COA

**KAYLA MARIE BATES MIZE**                                    **APPELLANT**

v.

**ROYCE JARRELL MIZE, III**                                    **APPELLEE**

DATE OF JUDGMENT:            05/02/2013
TRIAL JUDGE:                 HON. JOE DALE WALKER
COURT FROM WHICH APPEALED:   JEFFERSON DAVIS COUNTY CHANCERY
                             COURT
ATTORNEYS FOR APPELLANT:     CHRISTOPHER RANDALL PURDUM
                             AUDRY REGNAL BLACKLEDGE
ATTORNEY FOR APPELLEE:       JAMES BURVON SYKES III
NATURE OF THE CASE:          CIVIL - CUSTODY
TRIAL COURT DISPOSITION:     GRANTED FATHER'S PETITION FOR
                             MODIFICATION
DISPOSITION:                 REVERSED AND RENDERED: 01/27/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Kayla Mize appeals the Jefferson Davis County Chancery Court's order granting her ex-husband, Jarrell Mize, full legal and physical custody of their son. We conclude that the chancellor erred in finding a material change in circumstances since the divorce. Accordingly, we reverse and render the chancellor's judgment.

## FACTS

¶2.     Jarrell and Kayla Mize were married on October 27, 2007. They have one son, Christopher, born on August 6, 2007. On February 11, 2011, the couple divorced on the

ground of irreconcilable differences. The final judgment of divorce approved and incorporated a child custody, support, and property settlement agreement, which provided that they would share joint legal and physical custody of Christopher, age three, with each having physical custody during alternating weeks. At that time, Jarrell was working offshore every other week.

¶3. On May 16, 2011, Jarrell filed a petition for modification of the final judgment of divorce and for an emergency hearing, claiming that there had been a material change in circumstances since the original divorce decree. Jarrell asserted: (1) Kayla had failed to properly care after and provide for Christopher; (2) Kayla had failed to provide a stable home environment for Christopher; (3) Kayla had exposed Christopher to circumstances that adversely affected him; and (4) Kayla had done things to Christopher that adversely affected him mentally and physically. Jarrell requested sole legal and physical custody. Jarrell also requested an emergency hearing, based on allegations that Kayla was using illegal drugs and living with a man outside of wedlock.

¶4. The court held an emergency hearing the following day. With Kayla not present, Jarrell, Kayla's mother, and Kayla's grandmother each testified. Jarrell admitted he had no personal knowledge regarding the allegations in his petition; he testified that he was told Kayla had been kicked out of her father's house. He also stated that Kayla had lost a lot of weight since the divorce and looked tired. Kayla's mother testified that Kayla was kicked out because her family did not approve of her relationship with a black man. She further testified that she did not know if Christopher had ever met Kayla's boyfriend. She added that

2

she suspected Kayla may be using drugs, based on her weight loss. When questioned further on the issue, Kayla's mother stated that Kayla drank lots of caffeinated drinks throughout the day. Kayla's grandmother's testimony referenced Kayla's weight loss but made no mention of any drug use. At the close of the hearing, the court granted Jarrell's emergency order for sole custody and appointed a guardian ad litem to investigate Jarrell's claims. The court issued an order awarding Jarrell full physical custody, pending a hearing on his petition for modification. Kayla was awarded limited visitation – 1 p.m. to 7 p.m. on Saturdays when Jarrell was offshore. The order stated visitation was required to take place in her mother's home, with her mother present.

¶5. The court held another hearing on June 29, 2011, to review the temporary emergency order. Kayla had not seen her son for a month and a half, besides the limited visitation under her mother's supervision. The guardian ad litem (GAL) submitted a report, testified, and questioned witnesses. She conducted telephone interviews with Jarrell, his mother, and Kayla's grandmother. She also interviewed Kayla and her mother. The GAL's investigation revealed that Kayla moved in with her mother just a few days after the emergency hearing. In addition, the GAL reviewed a drug test taken by Kayla Mize; it was negative. The GAL concluded that, since Kayla had moved in with her mother, an emergency situation no longer existed. She recommended the emergency order be lifted.

¶6. Kayla's mother and grandmother also testified at the June hearing. Contrary to their May emergency-hearing testimony, they testified in support of Kayla. Kayla's mother stated that she previously testified against Kayla because she was dating a black man named

3

Rahkem Williams; she also stated that she did not really believe that Kayla was using drugs. Specifically, she stated, "I knew with [Kayla] dating a black guy[,] that would not be enough for the judge to take Christopher away from her, but if [I] insinuate[d] that there may be drug use . . . [the judge] will do something more about it." Kayla's mother also testified that she was the person who told Jarrell about Kayla's alleged drug use.

¶7.    Kayla testified that she did not appear at the May 17 hearing because she had no personal transportation, and she was unable to get a ride from someone else. The judge did not believe her explanation. Regarding her weight loss, Kayla testified that she had been exercising and eating a healthy diet. She testified that she moved in with her mother after she was kicked out of her father's house for Rahkem. She also stated that she had since stopped dating Rahkem, and Christopher had never met him. The court left the temporary order in place pending a hearing on Jarrell's petition for modification.

¶8.    The court heard the petition on November 11, 2011. Kayla testified that she was still living with her mother. She further testified that she was back together with Rakhem, but she would not introduce him to Christopher until the relationship became more serious. She also stated that she spent the night with Rakhem after she was kicked out of her father's house in May, when Jarrell had custody of Christopher. And since then, she only saw Christopher during the times specified in the temporary order. Rahkem also testified; he stated he had never met Christopher. He further stated that Kayla had been staying with him almost every night since early October.

¶9.    Jarrell testified, detailing his time with Christopher since he had acquired sole

4

custody. He stated that his work schedule had recently been changed – working offshore two weeks at a time instead of one week. He also stated that he had been spending nights with his paramour when he was not working offshore; on those occasions, Christopher would stay with Jarrell's mother and sister. On cross-examination, Kayla's attorney asked Jarrell what evidence existed to show a material change in circumstances; Jarrell replied that he filed the petition because he was confronted by Kayla's family and had based his filing on what they told him.

¶10.    The second day of the hearing was not held until six months later. By this time, Kayla had married Rahkem; they lived together in a three-bedroom home. Kayla stated that Christopher met Rahkem for the first time after they were engaged in February 2012. She also testified that she wanted custody of Christopher. Jarrell had also remarried since the last hearing.

¶11.    The court found that there had been a material change in circumstances adverse to Christopher's best interest. The court then considered the *Albright*[1] factors, ruling against Kayla on the following factors: (1) willingness and capacity to provide primary care, (2) moral fitness, and (3) stability of the home environment and employment of each parent. The court found the remaining factors to favor neither parent. Ultimately, Jarrell was awarded full legal and physical custody of Christopher, and Kayla was required to pay monthly child support. The court granted Kayla standard, or "Farese," visitation. Kayla appealed.

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

## STANDARD OF REVIEW

¶12. "We will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused [his] discretion, was manifestly wrong [or] clearly erroneous[,] or applied an erroneous legal standard." *T.T.W. v. C.C.*, 839 So. 2d 501, 503 (¶6) (Miss. 2003) (citations omitted).

## DISCUSSION

¶13. Mississippi Code Annotated section 93-5-24(6) (Rev. 2013) provides that "[a]ny order for joint custody may be modified or terminated upon the petition of both parents or upon the petition of one (1) parent showing that a material change in circumstances has occurred." Miss. Code Ann. § 93-5-24(6) (Rev. 2010). Further, our supreme court has stated that, in joint custody cases, "[i]n order to modify child custody, it must be proven that a material change in circumstances has occurred that adversely affects the welfare of the child." *Porter v. Porter*, 23 So. 3d 438, 447 (¶23) (Miss. 2009) (citation omitted).

¶14. In determining whether a material change in circumstances has occurred, the chancellor must consider the totality of the circumstances. *Creel v. Cornacchione,* 831 So. 2d 1179, 1183 (¶15) (Miss. Ct. App. 2002) (citing *Ash v. Ash,* 622 So. 2d 1264, 1266 (Miss. 1993)). If a material change in circumstances is found to have occurred, the chancellor "must separately and affirmatively determine that this change is one which adversely affects the child[]." *Bredemeier v. Jackson,* 689 So. 2d 770, 775 (Miss. 1997) (citation omitted). After finding an adverse material change, "the next step is to apply the *Albright* factors to determine whether modification is in the child's best interest." *White v. White,* 26 So. 3d

6

342, 351 (¶28) (Miss. 2010).

¶15. Kayla argues that the chancellor erred in finding a material change in circumstances. "The burden of proof is on the movant to show by a preponderance of the evidence that a material change in circumstances has occurred in the . . . home." *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003) (citation omitted). This Court has emphasized that, "[w]hen considering a modification of child custody, the proper approach [for chancellors] is to first identify the specific change in circumstances, and then analyze and apply the *Albright* factors in light of that change." *Sturgis v. Sturgis,* 792 So. 2d 1020, 1025 (¶19) (Miss. Ct. App. 2001); *see also Wilson v. Wilson*, 79 So. 3d 551, 561 (¶43) (Miss. Ct. App. 2012). Otherwise, "this Court is placed in the position of attempting to guess what the chancellor determined was a proper basis for a change in custody." *Sturgis,* 792 So. 2d at 1025 (¶19).

¶16. Here, it is unclear from the chancellor's ruling what "material change" led to his *Albright* analysis. In awarding custody to Jarrell, the chancellor seemed, in large part, to rely on a perception of a poor attitude and of dishonesty of Kayla in the courtroom. In his findings, the chancellor stated that, "[a]lthough [Christopher] was not with her when she stayed with [Rahkem], [Kayla] intentionally and knowingly lied to the court about where she was living." The chancellor further stated that Kayla appeared to be "cold" during her testimony and that she did not have a stable home for Christopher to live. The chancellor also stated that Kayla testified that she went to work the same day she failed to show up for the emergency hearing. Although the chancellor is in "a better position th[a]n this Court to judge the veracity of witnesses and credibility of evidence," we must note that some

7

information in his findings of fact is incorrect. *Lee v. Lee*, 798 So. 2d 1284, 1291 (¶29) (Miss. 2001). For example, the record shows that Kayla testified that she did not go to work the day of the hearing. She further testified that she knew she was supposed to be at the hearing but was unable to get a ride.

¶17. The evidence showed that Kayla had moved in with her mother just a few days after she was kicked out of her father's house. Kayla's mother, grandmother, and father all testified that they initially overreacted because Kayla was dating a black man, but they had since accepted the relationship. At the November hearing, Rahkem testified that Kayla stayed with him overnight almost every night in October. During that time, Kayla had limited visitation with Christopher and never had him past 7 p.m. By the May 2012 hearing, Kayla had married Rahkem, and they had a home together.

¶18. There was no evidence presented as to how Kayla's living situation since the original divorce decree adversely affected Christopher, much less any evidence of harm or danger. *See Giannaris v. Giannaris,* 960 So. 2d 462, 467-68 (¶10) (Miss. 2007) (stating that modification must be based on conduct of the parent that poses a danger to the mental or emotional health of the child). Jarrell testified that Kayla was possibly using drugs, based on information he learned from Kayla's mother. But there was no evidence to support those allegations. Furthermore, the chancellor did not explain how any "material change" was adverse to Christopher's best interest. After careful review, we find that the record does not support a finding of a material change in circumstances that would warrant a change in custody. Consequently, the chancellor's analysis under the *Albright* factors was premature.

8

¶19.    We hold that the chancellor's finding that a material change of circumstances had adversely affected Christopher was manifestly wrong and that it was not supported by substantial evidence. Accordingly, we reverse and render the judgment of the Chancery Court of Jefferson Davis County.

¶20.    **THE JUDGMENT OF THE CHANCERY COURT OF JEFFERSON DAVIS COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**