# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00918-COA

**TAI CURRY FOX**                                                          **APPELLANT**

**v.**

**JOHN P. FOX III**                                                          **APPELLEE**

DATE OF JUDGMENT:              07/29/2022
TRIAL JUDGE:                          HON. JOHN C. McLAURIN JR.
COURT FROM WHICH APPEALED:   RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       ROBERT RUSSELL WILLIARD
ATTORNEY FOR APPELLEE:        CHRISTOPHER A. TABB
NATURE OF THE CASE:           CIVIL - CUSTODY
DISPOSITION:                  REVERSED AND REMANDED - 11/07/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    Tai Curry Fox (Curry) appeals the Rankin County Chancery Court's denial of her request to modify the child-custody agreement between Curry and her ex-husband, John Fox III (Fox). Finding error, we reverse the chancellor's judgment and remand this case for further proceedings consistent with this opinion.

## FACTS

¶2.    Curry and Fox divorced in 2012. The parties were awarded joint legal and physical custody of their minor child, G.F.,[1] who was born in 2010. Curry and Fox eventually agreed to share physical custody of G.F. on a week-to-week basis. In April 2018, an order was

---

[1] To protect the minor child's privacy, we will refer to the child throughout this opinion as "G.F."

entered reflecting the new week-to-week custody agreement.[2]

¶3.    In December 2018, Curry began working periodically as an emergency room veterinarian at a friend's practice in Florida.  Due to the higher salary, Curry eventually began working full-time in Florida on the weeks when she did not have physical custody of G.F.  In February 2021, Curry moved her permanent residence to Florida, but she maintained her apartment in Rankin County.

¶4.    Curry eventually received an opportunity to buy the veterinary practice in Florida and open her own emergency room, which would require Curry to be in Florida full-time.  On December 8, 2021, Curry filed a complaint for modification of custody, requesting sole physical custody of G.F.

¶5.    At the hearing on Curry's complaint, the chancellor heard testimony from Curry, G.F., and Curry's mother, Kathy.  Curry testified that her new employment as the owner of a veterinary clinic required her to be in Florida full-time; as a result, the week-to-week custody schedule would no longer be workable.  G.F., who turned twelve years old on the day of the hearing, expressed his desire to live with Curry in Florida. G.F. also executed a "Child's Election Affidavit" stating his preference to live with Curry.

¶6.    At the close of Curry's case-in-chief, Fox moved to dismiss Curry's complaint pursuant to Mississippi Rule of Civil Procedure 41(b).  After hearing arguments, the chancellor ultimately granted Fox's motion to dismiss.  On July 29, 2022, the chancellor

---

[2] The parties' April 2018 agreed order is not in the record before us.

entered an order denying the relief requested in Curry's complaint for modification and ruling that the parties would continue sharing joint legal and physical custody of G.F.

¶7. On August 8, 2022, Curry filed a motion for reconsideration and clarification of the chancellor's July 29, 2022 judgment. The chancellor entered an order denying Curry's motion for reconsideration. However, the chancellor clarified that Fox shall be required to pay one-half of the cost of sixth-grade tuition at St. Richard's Catholic School for the year 2021-2022 as his contribution to the financial cost of G.F.'s education.

¶8. Curry now appeals.

## STANDARD OF REVIEW

¶9. We employ a limited review of a chancellor's denial of a request for modification of child custody based on a material change in circumstances. *Page v. Graves*, 283 So. 3d 269, 274 (¶18) (Miss. Ct. App. 2019). We "will affirm findings of fact by chancellors when they are supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id*. We review a chancellor's interpretation and application of the law de novo. *Smith v. Smith*, 318 So. 3d 484, 491 (¶18) (Miss. Ct. App. 2021).

¶10. Additionally, "[w]e review a chancellor's decision to grant a Rule 41(b) dismissal in a modification of child custody action under the deferential substantial-evidence/manifest-error standard." *Page*, 283 So. 3d at 274 (¶22). We have stated that "[a] judge should grant a motion for involuntary dismissal if, after viewing the evidence fairly, rather than in the light

3

most favorable to the plaintiff, the judge would find for the defendant." *Id*. at (¶21). "The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Id*.

**DISCUSSION**

¶11. Curry argues that the chancellor erred by finding that her permanent move to Florida failed to constitute a material change in circumstances that would warrant modification of the parties' joint physical custody arrangement. Curry asserts the evidence shows that her permanent move to Florida would make the current joint custody arrangement impossible and impractical. Curry also argues that her permanent move's effect on the current custody arrangement would adversely affect G.F., and therefore modification was warranted. Curry further submits that the chancellor failed to consider the totality of the circumstances, including G.F.'s testimony, in determining whether a material change in circumstances had occurred.

¶12. When determining whether custody modification is warranted, Mississippi courts utilize a three-prong test. *Hammons v. Hammons*, 289 So. 3d 1214, 1218 (¶16) (Miss. Ct. App. 2020). First, the party seeking modification must establish by a preponderance of the evidence that a material change in circumstances has occurred in the home of the custodial parent since the most recent custody decree. *Id*. Second, "the moving party must show that the change in circumstances has an adverse effect on the minor child." *Id*. at (¶17). Finally, "[m]odification must be in the best interest of the minor child." *Id*. at (¶18). "Determination

of the child's best interest is based on an application of the *Albright*[3] factors to the facts of the case." *Id*. at 1219 (¶18).

¶13. We first turn to examine whether Curry met her burden of proving that a material change in circumstances has occurred in the custodial home since the most recent custodial decree. "A change in circumstances is a change in the overall living conditions in which the child is found . . . ." *Gainey v. Edington*, 24 So. 3d 333, 336 (¶11) (Miss. Ct. App. 2009) (internal quotation marks omitted) (quoting *Tucker v. Tucker*, 453 So. 2d 1294, 1297 (Miss. 1984)). "In analyzing whether a material change of circumstances has occurred, the chancellor must consider the totality of the circumstances." *Domke v. Domke*, 305 So. 3d 1233, 1240 (¶17) (Miss. Ct. App. 2020) (internal quotation marks omitted). "Events which would not, alone, be a sufficient material change may in combination provide a basis for modifying custody." Deborah H. Bell, *Bell on Mississippi Family Law* § 12.12[a], at 453 (3d ed. 2020). "A move by one joint custodian will almost always be a material change in circumstances warranting a change to sole physical custody in one parent." *Id*. §12.12[5][a], at 468; *see also Elliott v. Elliott,* 877 So. 2d 450, 455 (¶18) (Miss. Ct. App. 2003) (recognizing that "the moving of one party is sufficient grounds for modification because it makes joint custody impractical or impossible").

¶14. The record reflects that in April 2018, Curry and Fox entered an agreed order reflecting that they would share joint physical custody of G.F. on a week-to-week basis. At

---

[3] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

5

this time, Curry worked at a small animal practice in Jackson, Mississippi. Curry testified that in December 2018, a friend asked Curry to come to Florida and help out at her veterinary practice there. Curry initially began working in Florida on the weeks that she did not have physical custody of G.F. On the weeks when she had physical custody of G.F., Curry worked part-time in Jackson.

¶15.    Curry testified that she fell in love with her work in Florida and that it paid more than her job in Mississippi. In December 2020, Curry bought a house in Florida, but she still maintained her apartment in Rankin County. Curry filed a change-of-address form with the Rankin County Chancery Court in February 2021, stating that she legally moved her residence to Florida.

¶16.    Curry testified that she eventually had the opportunity to open her own emergency veterinary clinic in Florida. Curry explained that opening her own clinic required her to be in Florida every week, so it was impossible for her to maintain the current week-to-week custody schedule. As a result, Curry filed her complaint for modification of custody in December 2021, requesting sole physical custody of G.F. Curry testified that the lease agreement for her apartment in Rankin County expired in May 2022 and that her new clinic was scheduled to open in August 2022.

¶17.    Curry also testified that she and G.F. have a close relationship. Curry explained that in her household, G.F. is an only child, so she is able to focus more time on him. Curry stated that her new employment rendered the current custody arrangement unworkable, and

6

she opined that keeping the current arrangement would not be in G.F.'s best interest.

¶18.    Kathy, Curry's mom, also testified regarding Curry's relationship with G.F., describing it as close. Kathy explained that G.F. talks to Curry about his feelings and that G.F. and Curry communicate well with each other. Kathy testified that she and Curry's father live with Curry in Florida, and they help Curry care for G.F. when needed.

¶19.    The chancellor also heard testimony from G.F. On the day of the hearing, G.F. executed his Child's Election Affidavit stating his preference to move to Florida and live with Curry. G.F. testified that he preferred to live with Curry because he felt that she loved him and treated him fairly. G.F. explained that he could talk openly with Curry.

¶20.    As for his relationship with Fox, G.F. testified that he loved his father, but G.F. stated that he felt like an outsider at Fox's home. G.F. also testified that Fox makes G.F. "feel bad about [his] decisions sometimes," and G.F. gave the example of when he told Fox he wanted to move to Florida and live with Curry. According to G.F., Fox responded to the news by telling G.F. that he would miss out on time with his father's side of the family and doubting that Curry would let G.F. return to Mississippi and visit.

¶21.    The record reflects that Fox is remarried, and G.F. has a paternal half-sister and half-brother whom he sees on the weeks when Fox has physical custody. G.F.'s half-sister is approximately eleven weeks older than him, and G.F. testified that he is not as close to his half-sister as he would like to be. G.F. testified that he enjoys playing with his three-year-old half-brother. G.F. also testified that he gets along "pretty well" with his stepmother. When

asked if he would like to live with Fox for ten months out of the year and with Curry for only two months, G.F. stated that it would be "okay," but he clarified that this hypothetical custody arrangement would not be "perfect."

¶22. G.F. also testified about his relationship with his grandparents. G.F. stated that he enjoyed spending time with his father's mother in the summer. As stated, Curry's parents moved to Florida and lived with Curry at her new home. G.F. testified that he gets along "very well" with his maternal grandparents. Kathy also testified and confirmed that she and G.F. "have a great relationship."

¶23. At the close of Curry's case-in-chief, Fox moved to dismiss Curry's complaint. Fox argued that Curry failed to show a material change in circumstances other than "the fact that [Curry] has decided to buy a house in Florida and move full time down in Florida[.]" Fox further claimed that Curry's employment opportunity was not "new" because Curry had already been living and working in Florida every other week for the past two years.

¶24. Fox's attorney also referenced an October 2020 hearing on the parties' motions for contempt, and he argued that the October 2020 hearing would have been the appropriate time for Curry to move to modify custody rather than waiting until December 2021. The chancellor agreed. However, Curry's attorney responded that at the time of the October 2020 hearing, Curry was still working in Florida every other week, and she still maintained her residence in Rankin County. Curry's attorney explained that the opportunity to purchase and open the emergency clinic did not arise until *after* the October 2020 hearing.

8

¶25. As stated, the parties' week-to-week custody arrangement was established in April 2018. The only document relating to the October 2020 hearing in the record before us is the chancellor's October 23, 2020 "Order of Contempt," which provides that the October 2020 hearing addressed the following motions: (1) Curry's motion requesting the chancellor to find Fox in contempt for failing to pay his half of G.F.'s tuition, (2) Fox's motion for modification of child custody, and (3) Fox's motion requesting that the chancellor find Curry in contempt as a result of Curry's inability (due to COVID-19 travel restrictions) to return G.F. to Mississippi from Florida in time for Fox to have his week of custody. The order reflects that the chancellor ultimately found Fox in contempt for failure to pay his half of G.F.'s tuition and dismissed Fox's motion for modification and motion to find Curry in contempt.

¶26. After hearing arguments, the chancellor granted Fox's Rule 41(b) motion to dismiss and denied Curry's request for modification. The chancellor held that he did not find that "any material change adverse to the welfare of this child occurring in Mr. Fox's home . . . [that would] justify me changing the custody or me going . . . into an *Albright* analysis, because other than [Curry] living in Florida, . . . nothing has changed[.]" The chancellor explained that as of the October 2020 hearing, the parties' circumstances had not changed "other than that instead of coming back up here every other week, [Curry is] staying there full time now." The chancellor also stated that Curry was already living in Florida when the October 2020 order was entered.

9

¶27.    However, the record reflects that the October 2020 hearing addressed the parties'

motions for contempt and Fox's motion for modification and did not establish or modify the

custody arrangement.  Our caselaw is clear that the moving party must prove that "a material

change of circumstances has occurred in the custodial home since the most recent custody

decree."  *Powell v. Powell*, 976 So. 2d 358, 361 (¶11) (Miss. Ct. App. 2008).  Neither party

disputes that the April 2018 agreed order is the order that sets forth the current week-to-week

custody arrangement.  At the time the April 2018 order was entered, Curry was living in

Mississippi full-time.  Curry testified that she did not begin working in Florida until

December 2018.

¶28.    As acknowledged, "[a] move by one joint custodian will almost always be a material

change in circumstances warranting a change to sole physical custody in one parent."  *Bell*,

*supra* ¶13, §12.12[5][a], at 468.  However, "the mere moving of the custodial parent does

not constitute a material change in circumstances for child-custody modification purposes."

*Domke*, 305 So. 3d at 1240 (¶18) (internal quotation marks omitted).  The dispositive issue

is "the effect the move has on the child and the custody arrangement."  *Id*.  This Court has

held that "the moving of one party is sufficient grounds for modification because it makes

joint custody impractical or impossible."  *Elliott*, 877 So. 2d at 455 (¶18).

¶29.    At the hearing, Curry testified that she was no longer employed in a capacity that

allowed her to spend half of her time in Mississippi as she had done since December 2018.

Curry explained that her new employment as the owner of an emergency veterinary clinic

10

would require her to be in Florida full-time. We find that Curry's testimony shows that the parties' week-to-week custody arrangement would become impractical and difficult for Curry to maintain. *See Porter v. Porter*, 23 So. 3d 438, 447 (¶24) (Miss. 2009) (affirming chancellor's finding that a mother's move to Tennessee made the joint custody arrangement impractical and accordingly constituted a material change in circumstances adverse to the children's best interest); *Lackey v. Fuller*, 755 So. 2d 1083, 1088-89 (¶¶25-30) (Miss. 2000) (finding that a mother's move to New York made exchange of custody every two weeks impractical); *Rinehart v. Barnes*, 819 So. 2d 564, 566 (¶7) (Miss. Ct. App. 2002) (affirming chancellor's modification of joint physical custody to sole physical custody after finding that "shared custody agreement between parents of a child of school age, living in two different states, would be quite difficult to maintain"); *Massey v. Huggins*, 799 So. 2d 902, 906 (¶11) (Miss. Ct. App. 2001) (recognizing that in some cases, modification in custody is warranted when a joint custody arrangement becomes impractical after one or both parents moved); *McRee v. McRee*, 723 So. 2d 1217, 1219 (¶¶5-8) (Miss. Ct. App. 1998) (finding that a mother's move to Texas made a month-to-month custody agreement impractical).

¶30. We also find that the chancellor failed to consider the totality of the circumstances, including how Curry's inability to maintain the current custody arrangement would affect G.F. *See Lackey*, 755 So. 2d at 1088 (¶24); *see also Culver v. Culver*, No. 2021-CA-01108-COA, 2023 WL 3594128, at *4 (¶¶12-13) (Miss. Ct. App. May 23, 2023) (affirming chancellor's finding that a mother's move to Virginia constituted a material change in

circumstances adverse to the welfare of the minor children where the chancellor considered the totality of the circumstances and based his decision on the impact of the move on the children). As stated, the dispositive factor in determining whether a material change in circumstances has occurred is not the move itself but, rather, "the effect the move has on the child and the custody arrangement." *Domke*, 305 So. 3d at 1240 (¶18). In finding no material change in circumstances adverse to G.F., the chancellor's bench ruling reflects that he largely based his determination on the fact that Curry was the one who made the decision to obtain full-time employment in Florida, rather than continuing to work there part-time, and that Fox should not be "punished" for Curry's choices by having his custody arrangement modified. The chancellor did not make any express findings as to how Curry's full-time residence in Florida, which would make the current custody arrangement difficult and impractical, would affect G.F. However, it is clear from the record that when considering the totality of circumstances, Curry's move renders the current joint custody arrangement unworkable and constitutes a material change in circumstances adverse to G.F.

¶31. After our review, we find that Curry presented sufficient evidence of a material change in circumstances adverse to G.F. to survive the Rule 41(b) dismissal. As stated, the standard for granting a Rule 41(b) dismissal is "if, after viewing the evidence fairly, rather than in the light most favorable to the plaintiff, the judge would find for the defendant." *Page*, 283 So. 3d at 274 (¶21). We therefore reverse the chancellor's judgment denying Curry's complaint for modification and remand this case to the chancellor for further

proceedings consistent with this opinion. Because Curry met her burden of showing an adverse material change, "the next step is to apply the *Albright* factors to determine whether modification is in the child's best interest." *Id*. at 287 (¶76) (quoting *White v. White*, 26 So. 3d 342, 351 (¶28) (Miss. 2010)).

¶32. **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**